[No. 43923-5-I.    Division One.    March 13, 2000.]

ROBERT BRINKERHOFF, *Appellant*, v. JAMES F. CAMPBELL, *Respondent*.

*Linda B. Clapham* and *Alison L. Yearsley* of *Lane Powell Spears Lubersky, L.L.P.*, for appellant.

*Sidney R. Snyder, Jr.* of *Merrick Hofstedt & Lindsey*, for respondent.

BECKER, J. — Robert Brinkerhoff appeals the trial court's order enforcing a settlement agreement that he signed. A genuine issue of material fact exists as to whether there was a misrepresentation that would allow Brinkerhoff to avoid the agreement. The order is reversed so that the trial court may hold an evidentiary hearing to resolve the disputed factual issue.

Robert Brinkerhoff sustained personal injuries in a two-

car automobile accident. At the time of the accident, Brinkerhoff was driving his employer's truck in the course of his employment. He filed a worker's compensation claim and received over $90,000 in benefits for his medical costs and salary loss.

Brinkerhoff sued James Campbell, the driver of the other vehicle. He retained attorney Paul Novack to represent him. Campbell had an automobile insurance policy with Farmers Insurance Company. Novack did not inquire, either informally or through discovery, as to the extent of Campbell's coverage. Somehow, and not because of anything he was told by Campbell or Farmers, Novack developed the mistaken impression that the limits of the Farmer's policy were $100,000. On three occasions he wrote to Farmers demanding "your insured's policy limits of $100K." Campbell's actual policy limits were $250,000. He also had an umbrella policy with limits of $1,000,000.

Campbell eventually admitted liability and the parties agreed to try to settle Brinkerhoff's damages claim through mediation. Brinkerhoff was present at the mediation, along with Novack, his attorney. A representative from the Department of Labor and Industries was also present. Campbell's attorney, Michael Lewis, attended the mediation on behalf of Campbell, accompanied by a representative from Farmers.

At the mediation, Brinkerhoff agreed to settle his claim against Campbell for $90,000. Faced with a Labor and Industries lien in excess of $90,000, Brinkerhoff would have had no incentive to settle with Campbell for $90,000 if he had known of the actual policy limits. But because he believed the policy limits were only $100,000, he assumed he would be able to pursue the balance of a full recovery through a UIM claim with his employer's carrier. Brinkerhoff reduced the agreement to writing as follows:

> I Robert Brinkerhoff agree to settle all claims (except potential UIM claim if any) for the total sum of $90K on the following conditions:

(1) Plaintiff's employer's or UIM carrier approval of settlement amount

(2) Plaintiff to sign hold harmless & release

Lewis and the representative from Farmers knew that Brinkerhoff and Novack were mistaken about the policy limits, but said nothing to correct the mistake. The agreement was signed by each of the five persons attending the mediation.

Following the mediation, Lewis sent Novack the release, the hold harmless agreement, and a $90,000 check from Farmers. Brinkerhoff did not sign and return the documents, and he did not cash the check. Novack began to pursue a underinsured motorist (UIM) claim on Brinkerhoff's behalf. The UIM carrier asked for proof of Campbell's policy limits. Novack wrote to Lewis asking for a "letter that states the policy limits herein of $100K." At this point, Lewis informed Novack about the policy limits of $250,000 and the $1 million umbrella policy.

Campbell moved to enforce the $90,000 settlement agreement. Brinkerhoff retained a new attorney and moved to declare the agreement void and unenforceable due to misrepresentation of a material fact. The parties submitted declarations describing the events leading up to the mediation and agreement.

The trial court concluded that the $90,000 settlement agreement was enforceable, and entered an "Order Enforcing Settlement." The order contains the court's finding that "Lewis made no affirmative misrepresentations." The order states that Novack had an "affirmative duty to obtain information regarding defendant's policy limits and failed to do so" and that "Lewis had no duty to voluntarily disclose policy information not requested" by Novack. Brinkerhoff appeals from the order enforcing the settlement.

## STANDARD OF REVIEW

The threshold issue, the standard of review, is significant

to our disposition of the case. Campbell contends that the trial court's decision to enforce the settlement agreement should be reviewed under the deferential abuse of discretion standard. We hold that the applicable standard of review is de novo because the evidence before the trial court consisted entirely of affidavits and the proceeding is similar to a summary judgment proceeding.

Campbell finds support for the abuse of discretion standard in *Patterson v. Taylor*, 93 Wn. App. 579, 586, 969 P.2d 1106 (1999), and in *Morris v. Maks*, 69 Wn. App. 865, 868, 850 P.2d 1357, *review denied*, 122 Wn.2d 1020 (1993). In *Patterson*, the issue raised by the appellant was whether the trial court erred in enforcing the settlement agreement because of fraud, coercion, and mistake. The court reviewed evidence supplied by affidavits or declarations and found that the appellant had failed to establish each defense. In rejecting each of the appellant's claims, the court concluded that "the trial court did not abuse its discretion." *Patterson*, 93 Wn. App. at 585-89.

*Patterson*'s statement of the abuse of discretion standard is traceable to *Morris v. Maks*, 69 Wn. App. at 868. *Morris*, in turn, was quoting a standard stated by the Ninth Circuit in *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). In *Callie*, the court found that the trial court had abused its discretion in enforcing a settlement agreement where it failed to conduct an evidentiary hearing to resolve disputed facts. Neither *Morris* nor *Callie* supports the proposition that a trial court has the discretion to enforce a settlement agreement where disputed facts remain unresolved.

When a moving party relies on affidavits or declarations to show that a settlement agreement is not genuinely disputed, the trial court proceeds as if considering a motion for summary judgment. *In re Marriage of Ferree*, 71 Wn. App. 35, 43, 856 P.2d 706 (1993). *Patterson* relies on *Ferree*, see *Patterson*, 93 Wn. App. at 584, and accepts *Ferree*'s application of summary judgment procedures. Thus, the party moving to enforce a settlement agreement carries the burden of proving that there is no genuine dispute over the

existence and material terms of the agreement. *Ferree*, 71 Wn. App. at 41. The court must read the parties' submissions in the light most favorable to the nonmoving party and determine whether reasonable minds could reach but one conclusion. *Id.* at 44.

Campbell suggests that the *Ferree* summary judgment standard applies *only* when there is a material dispute regarding the existence or material terms of the settlement agreement. We see no reason why the summary judgment standard of review should not also apply where, as here, there is a dispute of material fact about a defense to an agreement. If there is an issue of material fact, the issue should be resolved by a fact-finding hearing. *Ferree*, *Morris* and *Patterson* are not discordant. Together, they establish that the governing principles in summary judgment proceedings are applicable to motions to enforce a settlement agreement; and if the nonmoving party raises a genuine issue of material fact, a trial court abuses its discretion if it enforces the agreement without first holding an evidentiary hearing to resolve the disputed issues of fact.

## MISREPRESENTATION

■ With the summary judgment standard of review in mind, we review the record de novo to determine whether Brinkerhoff has raised a triable issue of misrepresentation as a defense to the agreement. A party's misrepresentation of a material fact may render a contract voidable. *Yakima County (W. Valley) Fire Protection Dist. v. City of Yakima*, 122 Wn.2d 371, 390, 858 P.2d 245 (1993), citing RESTATEMENT (SECOND) OF CONTRACTS § 164(1) (1981); *Crisman v. Crisman*, 85 Wn. App. 15, 22, 931 P.2d 163, *review denied*, 132 Wn.2d 1008 (1997). The party seeking to have the contract voided based on misrepresentation has the burden of establishing that the party's manifestation of assent is induced by an assertion or representation not in accord with the facts; that the assertion is either fraudulent or material; and that the recipient is justified in relying on the assertion. *Fire Protection Dist.*, 122 Wn.2d at 390.

Clearly, the extent of Campbell's coverage was a material fact. Brinkerhoff claims that Lewis's failure to correct his mistaken impression about the policy limits was tantamount to an "assertion" that Campbell's insurance coverage was limited to $100,000. Campbell maintains that he and his agents made no assertion about policy limits; they simply remained silent believing they had no duty to disclose the actual limits unless asked to do so.

■ A person's nondisclosure of a fact known to him is equivalent to an assertion that the fact does not exist " 'where he knows that disclosure of the fact would correct a mistake of the other party as to a basic assumption on which that party is making the contract and if nondisclosure of the fact amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.' " *Mitchell v. Straith*, 40 Wn. App. 405, 410-11, 698 P.2d 609 (1985) (quoting RESTATEMENT (SECOND) OF CONTRACTS, § 161 (1981)). But a person's silence does not amount to a failure to act in good faith absent an affirmative duty to disclose material facts. *See Crisman*, 85 Wn. App. at 22.

■ An affirmative duty to disclose can arise where a special relationship of trust and confidence has been developed between the parties; where one party is relying upon the superior specialized knowledge and experience of the other; where a seller has knowledge of a material fact not easily discoverable by the buyer; and where there exists a statutory duty to disclose. *Favors v. Matzke*, 53 Wn. App. 789, 796, 770 P.2d 686, *review denied*, 113 Wn.2d 1033 (1989). The relationship between Brinkerhoff and Campbell, and the relationship between their respective attorneys, did not fall into any of these categories. The relationship was adversarial, not one of trust or reliance. In the absence of an inquiry, Campbell and his agents had no affirmative duty to disclose Campbell's policy limits, even after they became aware that disclosure of the limits would correct Brinkerhoff's mistake as to a basic assumption on which he agreed to accept less than a full recovery from the tortfeasor.

According to the declarations, no one made a direct inquiry during the mediation to verify the policy limits. The two groups spent most of the time in separate rooms. The mediator believed the policy limits to be $100,000 and made several references to the policy limits being $100,000 when he was meeting with Brinkerhoff's group. But on this record, there is no evidence that the mediator gained that mistaken assumption from anyone speaking for Campbell.

Novack, however, declares that he spoke alone to Lewis right before the mediation began, and told him " 'my client will only accept a settlement of your client's full insurance policy limit, which I understand to be $100K?' " According to Novack's declaration, Lewis acknowledged that he understood Novack's position. Novack also declares that right before the parties proceeded to sign the agreement produced by the mediation, he told Lewis that before he signed he needed a formal certification of the $100,000 policy limits so that he could proceed with the UIM claim. Novack states, "Mr. Lewis advised me that he understood but that he did not have certification on him. Mr. Lewis suggested we sign and same would be forthcoming. I *again* reiterated that *'I will be sending you a request for a formal certification of defendant's policy limit of $100K.'* "

Lewis denies that these conversations took place. But if they did, they tend to show that Lewis made an affirmative misrepresentation that the policy limits were $100,000. Brinkerhoff's appellate brief refers only fleetingly to this factual dispute. Nevertheless, it is the obligation of Campbell, as the party seeking to enforce the agreement, to demonstrate the absence of any genuine factual disputes.

Because our standard of review is de novo, and we do not defer to the trial court's evaluation of the record, we cannot overlook the significant factual dispute about what Novack and Lewis said to each other. Considering only the affidavits, the court found that Lewis made no affirmative misrepresentation. Because the record reflects a factual

dispute on this point, it was an abuse of discretion to make the finding without the benefit of an evidentiary hearing.

## CONDITION PRECEDENT AND UNILATERAL MISTAKE

■ Brinkerhoff also argues two other defenses to the settlement agreement: failure of a condition precedent, and unilateral mistake. One of Novack's affidavits states that the "settlement document clearly indicates on its face that the settlement was contingent upon the defendant having $100K policy limits." But Brinkerhoff made no legal arguments below about the failure of a condition precedent or the existence of a unilateral mistake. Indeed, Brinkerhoff's memorandum of law below makes clear that misrepresentation was his only defense to enforcement of the settlement agreement. Under these circumstances, Campbell did not have notice that he was expected to respond to the other theories, and the trial court did not rule on them. Because Brinkerhoff failed to raise these issues in the trial court, we will not consider them on appeal. *Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 780, 819 P.2d 370 (1991).

We reverse the order of the trial court and remand for an evidentiary hearing in which the parties are entitled to call and cross-examine witnesses to resolve factual disputes about what was said on the day of the mediation.

Reversed.

GROSSE and ELLINGTON, JJ., concur.