IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| TONI R. YOUNG, | ) | No. 67720-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| BENJAMIN A. COSGROVE, III, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 10, 2013 |

SCHINDLER, J. — Toni R. Young filed an action for equitable distribution of property acquired during the meretricious relationship and business partnership with Benjamin A. Cosgrove, III. Following mediation, Young and Cosgrove entered into a Civil Rule 2A agreement (CR 2A Agreement). The parties agreed the CR 2A Agreement was "enforceable in court" and any disputes regarding "unresolved issues shall be submitted to binding arbitration." Cosgrove appeals the order compelling arbitration of disputes related to the CR 2A Agreement, the order to enforce the CR 2A Agreement, the order confirming the arbitrator's award of attorney fees, and entry of the judgment for attorney fees. Cosgrove argues the court erred by referring issues related to enforcement of the CR 2A Agreement and outside the scope of the arbitration clause to the arbitrator. We affirm.

FACTS

Young and Cosgrove began dating in 2000 and started living together in 2004. In 2004, Young used her savings to start operating a catering business, TRY Ventures. Young owned TRY Ventures as a sole proprietorship. All of the assets of the business were in her name. Cosgrove assumed responsibility for managing the finances, billing, and payroll of TRY Ventures.

In 2009, Young and Cosgrove ended their personal relationship, but continued to live together in Young's condominium and work together at TRY Ventures. By mid-2009, TRY Ventures had accumulated more debt than income. According to Young, Cosgrove encouraged her to file for bankruptcy. Young was reluctant to file for bankruptcy because she "was worried about [her] credit and financial future."

In March, Young and Cosgrove entered into an agreement that for the next five years, "any company owned, operated or existing by Benjamin A. Cosgrove III or Toni R. Young is a 50/50 ownership." In May, Cosgrove formed a new catering business called BACC LLC. Young said that she and Cosgrove operated BACC using the same employees, equipment, and clients of TRY Ventures.

On June 28, 2009, Young filed a chapter 7 bankruptcy petition requesting a discharge from her debts. On "Schedule B," Young lists all of her personal property, including a number of TRY Ventures assets. As part of the "Statement of Financial Affairs" requesting identification of the "[n]ature, location and name of business," Young listed TRY Ventures. The bankruptcy court granted the chapter 7 petition.

On January 15, 2010, Cosgrove obtained an ex parte temporary domestic violence no-contact order that prohibited Young from having contact with him at BACC

2

or her condominium. At the show cause hearing on January 29, the court dismissed the request for a no-contact order. Young said that when she returned to the condominium, her

> various fixtures, a safe containing cash, appliances, the shower head, the water heater, and various photographs of a personal nature [had been removed from the condominium]. [Cosgrove] ripped up the floors and took out the heating elements and cut or damaged the wiring within the condo. In the center of the floor was a small pile of my clothes. When I went downstairs to the storage unit, I found that it also had been emptied.

On February 9, Young filed a "Complaint for Equitable Distribution and/or Dissolution of Meretricious Relationship and Business Partnership." Young alleged that she and Cosgrove were in a meretricious relationship for six years and jointly owned BACC. Young also alleged that Cosgrove "loot[ed] and destroy[ed]" her possessions and changed the locks on the business storage units.

Cosgrove filed a motion for partial summary judgment on the grounds that the doctrine of judicial estoppel precluded Young from claiming BACC assets that were not listed on the bankruptcy schedules. The court denied the motion. The order states, in pertinent part:

> Plaintiff did not fail to disclose assets in BACC because it had no value at the time of the bankruptcy filing. In any event, even if plaintiff failed to disclose, judicial estoppel does not apply under the three-prong test of New Hampshire v. Maine, 532 U.S. 742[, 121 S. Ct. 1808, 149 L. Ed. 2d 968] (2001).

The parties agreed to mediation and selected Matthew Jolly as the mediator. Young and Cosgrove disputed the division of personal property as well as the location and existence of property, including posters and entertainment memorabilia. Young and Cosgrove entered into a CR 2A Agreement as "a full and complete settlement stipulation and agreement of the parties pursuant to CR2A." Cosgrove agreed to pay

3

Young $65,000 in installment payments. The first payment of $5,000 was due on December 31, with annual payments of $10,000 beginning in September 2011.

The CR 2A Agreement provides, in pertinent part:

> 1.1 Defendant shall pay Plaintiff $65,000 in settlement of all claims identified in her complaint subject to the terms of this agreement. Defendant shall pay $5,000 by 12/31/10 and shall pay the remainder in installments of $10,000 per annum on September 11[th] of each year commencing 9/11/11. This obligation shall be secured by a security interest in the assets, equipment and receivables of BACC, LLC.

Young and Cosgrove owned a wine collection that was stored at Eastside Wine Storage worth over $30,000. The parties agreed to divide the wine equally, and Cosgrove agreed to provide Young with a copy of the wine inventory.

> 1.5 The parties shall divide the wine collection equally except that Defendant shall retain any bottles purchased prior to 2004 as well as any large formats (3 liters or larger) and one-offs. For the portion of the wine collection being divided, it shall be divided based on alternate picks by each party with Plaintiff picking first. Defendant shall provide Plaintiff with copy of wine inventory previously completed by Eastside Wine Storage. The wine collection must be divided and removed from storage no later than December 31, 2010 or else the wine storage fee will be paid 50% by each party provided that both parties have operated in good faith.

The CR 2A Agreement contains very specific provisions as to the personal property. "Attachment A" to the CR 2A Agreement lists the personal property Cosgrove claimed was in Young's possession. Next to each item, Young states whether she had the item, was unsure, or did not have the item. Young agreed Cosgrove could complete a "walk through" of the condominium, her storage unit, and her parent's home, and she would return property identified in Attachment A. Cosgrove agreed Young could "walk through" his storage units to locate personal property.

> 1.3 Plaintiff will return personal property to Defendant as reflected in Attachment A as well as any other asset listed in Attachment A that is discovered during the walk throughs discussed in this agreement.

4

. . . .

      1.8    Defendant shall be granted an opportunity to complete a walk through of the Plaintiff's condo, her storage room, storage unit (if any) and her parent[s'] home, within the next 2 days. Plaintiff shall be granted an opportunity to complete a walk through of the Defendant's storage units as well. The purpose of the walk through is to locate personal property, in particular, the posters awarded to Defendant as well as items on Attachment A that are identified as not in Plaintiff's possession. If said items are located, they shall be awarded to Defendant.

The CR 2A Agreement states that it is enforceable in court but any disputes regarding "any unresolved issues" would be submitted to binding arbitration.

      3.1    Each party agrees and stipulates that this is a full and complete agreement between the parties and is enforceable in court. Each party understands that even though final documents yet need to be prepared this stipulation and agreement is binding upon execution and is enforceable in court. . . .

      3.2    The final documents for this matter shall be prepared by Counsel for Plaintiff.

      3.3    Any disputes regarding the drafting of final documents or any unresolved issues shall be submitted to binding arbitration with Matthew Jolly. The costs of such arbitration shall be paid 50% by the plaintiff and 50% by the defendant.

The day after the parties entered into the CR 2A Agreement, Cosgrove did a walk through of Young's condominium, storage unit, and her parents' house, and retrieved several van loads of personal property. But the parties disagreed about some of the property Cosgrove claimed he was entitled to and other property that could not be located.

In January 2011, Young demanded Cosgrove pay the past due installment payment of $5,000. In response, Cosgrove demanded Young return personal property he claimed she retained in violation of the settlement agreement.

On January 28, Young filed a motion in superior court to enforce the CR 2A Agreement. Young asserted Cosgrove breached the Agreement by refusing to pay the

$5,000 installment due December 31, 2010. Cosgrove argued Young breached the settlement agreement by refusing to return certain property. The court entered an order denying the motion to enforce the CR 2A Agreement, finding that "[i]ssues of fact exist regarding interpretation of the CR 2A."

Young requested the arbitrator schedule an arbitration. The arbitrator concluded the court order was ambiguous because the court

> did not direct the parties to resolve the issue through arbitration, which [it] certainly could have done. I am left to conclude that [the court] expects such factual disputes to be resolved at a hearing or trial with live testimony but I encourage the parties to seek clarification of [the court]'s intent.

Young filed a motion to clarify the order denying the motion to enforce the CR 2A Agreement. Young asked the court to "refer the matter to arbitration, set an evidentiary hearing, or reset the case for trial." In the "Order on Motion for Clarification," the court ordered that the "entire matter is referred to . . . Arbitration." Jolly scheduled the arbitration to begin on September 13.

Cosgrove filed a motion for discretionary review of the court order referring the CR 2A Agreement disputes to arbitration and a motion to stay arbitration. Cosgrove argued the issues related to enforcement were not subject to binding arbitration under the Agreement. A commissioner of this court denied the motion for discretionary review.

On July 26, Young notified Cosgrove that she intended to inspect the Eastside Wine Storage unit at 11:30 a.m. on August 3. Cosgrove did not respond. On August 2, Young contacted Cosgrove to reiterate that she planned to inspect the storage unit the next day at 11:30 a.m. When Young and her attorney went to the wine storage unit the next day, all of the wine was gone. Young demanded Cosgrove return the wine. Young

also demanded Cosgrove allow her to inspect the other storage units that he "previously refused" to allow her to inspect.

Young served the owner of Eastside Wine Storage, David Mullan, with a subpoena to testify at the arbitration and a subpoena duces tecum to produce all records related to Cosgrove, TRY Ventures, and BACC. Young served Cosgrove with a copy of the subpoena but not the subpoena duces tecum.

On September 2, Cosgrove filed a motion in superior court to stay the arbitration scheduled for September 13. Cosgrove argued issues related to whether he breached the CR 2A Agreement were not subject to arbitration. The trial court denied the motion to stay. Cosgrove filed a motion for discretionary review of the court order and an emergency motion to stay. A commissioner of this court denied the motion for discretionary review and emergency motion to stay.

The arbitration took place on September 26. Cosgrove objected to consideration of the written report that Mullan prepared in response to the subpoena duces tecum. The report shows that Cosgrove accessed the wine storage facility two days before Young came to inspect the storage unit. Because Cosgrove had insufficient notice of the written report from Eastside Wine Storage, the arbitrator did not admit the report into evidence. Cosgrove, Young, Young's parents, and Mullan testified at the arbitration.

The arbitrator issued an 18-page written decision. The arbitrator states that while he does not have the authority to "provide any direct enforcement or relief for breach of the agreement," or "order specific performance of the agreement once interpreted," he had the authority to resolve all factual disputes related to "the material terms" of the CR 2A Agreement.

The arbitrator found that Young complied with the obligation to allow Cosgrove to conduct a walk through and return his property. The arbitrator found that Cosgrove violated the CR 2A Agreement and that he acted in bad faith by removing the wine. The arbitrator awarded Young $4,000 in attorney fees under RCW 7.04A.210 and RCW 4.84.185 because "a significant portion of Cosgrove's claims and defenses were frivolous or advanced without reasonable cause." The arbitrator denied Cosgrove's request to reconsider the arbitration decision. Young filed a motion to confirm the arbitrator's award of $4,000 in attorney fees. The court granted the motion to confirm the award of attorney fees.

Young then filed a motion to enforce the CR 2A Agreement.[1] On November 18, 2011, the court entered an order granting the motion to enforce the CR 2A Agreement. The court ordered Cosgrove to pay Young the past-due installment payments of $15,000 and comply with the terms of the Agreement. The court awarded Young $2,070 in attorney fees.

> [Cosgrove] will pay $15,000.00 and the amount of attorney fees awarded, sign all documents he is required to sign, allow inspection of his storage area, produce the wine for division and otherwise bring himself into compliance with the CR2A within two weeks of the date of this order or judgment. If the defendant fails to bring himself into compliance with the agreement in this time then the Court will impose sanctions and any more attorney fees and costs incurred by plaintiff in enforcing this Order.

On December 7, the court entered an "Amended Order to Enforce CR2A Agreement" to correct a scrivener's error. The court entered a judgment against Cosgrove for $6,070 in attorney fees that included the previous award of attorney fees of $4,000 and the award of $2,070.

---

[1] The CR 2A Agreement required Cosgrove to pay $5,000 by December 31, 2010, and $10,000 by September 11, 2011.

No. 67720-9-I/9

ANALYSIS

Scope of Review

On January 5, 2012, Cosgrove filed a notice of appeal of the Amended Order to Enforce CR2A Agreement. On March 16, Cosgrove filed an amended notice of appeal. Young argues the amended notice of appeal does not meet the requirements of RAP 2.4(b). RAP 2.4(b) provides, in pertinent part:

> The appellate court will review a trial court order or ruling not designated in the notice, including an appealable order, if (1) the order or ruling prejudicially affects the decision designated in the notice, and (2) the order is entered, or the ruling is made, before the appellate court accepts review.

The amended notice of appeal seeks review of the following:

> (1) Order Denying Defendant's Motion for Partial Summary Judgment entered May 7, 2010 . . . ;
> (2) Order Denying Plaintiff's Motion to Enforce Settlement Agreement entered February 11, 2011 . . . ;
> (3) Order on Motion for Clarification entered March 28, 2011 . . . ;
> (4) Order Denying Defendant's Motion to Stay Arbitration entered September 13, 2011 . . . ;
> (5) Arbitration Decision dated October 6, 2011 . . . ;
> (6) Arbitrator's Ruling denying reconsideration dated October 12, 2011 . . . ;
> (7) Order to Enforce CR2A Agreement entered November 17, 2011 . . . ;
> (8) Order Confirming Arbitration Award and Ordering . . . Entry of Judgment, [entered November 28, 2011] . . . ;
> (9) Amended Order to Enforce CR2A Agreement, entered December 6, 2011.

With the exception of the order denying the motion for partial summary judgment, the amended notice of appeal complies with RAP 2.4(b). The order denying partial summary judgment was decided before Cosgrove agreed to mediation and entered into the CR 2A Agreement.

9

CR 2A Agreement

Cosgrove challenges the court orders compelling arbitration, confirming the arbitrator's award of attorney fees, and enforcing the CR 2A Agreement.[2] Cosgrove argues the court erred by referring issues related to enforcement of the CR 2A Agreement to the arbitrator. Young asserts that under the terms of the CR 2A Agreement, the arbitrator had the authority to resolve the unresolved disputes related to the Agreement, including personal property and the missing wine.

Normal contract principles apply to the interpretation of a CR 2A settlement agreement. Morris v. Maks, 69 Wn. App. 865, 868-69, 850 P.2d 1357 (1993). We review de novo a trial court's interpretation of the language of a contract. Knipschield v. C-J Recreation, Inc., 74 Wn. App. 212, 215, 872 P.2d 1102 (1994). A trial court's determination regarding the arbitrability of a dispute is also reviewed de novo. Heights at Issaquah Ridge Owners Ass'n v. Burton Landscape Grp., Inc., 148 Wn. App. 400, 404, 200 P.3d 254 (2009); Stein v. Geonerco, Inc., 105 Wn. App. 41, 45, 17 P.3d 1266 (2001).

Under the Uniform Arbitration Act, chapter 7.04A RCW, courts have the power to determine whether a controversy is subject to an agreement to arbitrate. RCW 7.04A.060(2); Saleemi v. Doctor's Assocs., Inc., 176 Wn.2d 368, 376, 292 P.3d 108 (2013). The arbitrability of a dispute is determined by examining the arbitration

---

[2] On appeal, Cosgrove did not assign error or otherwise challenge the Arbitration Decision or the Arbitrator's Ruling denying reconsideration. See RAP 10.3(a)(4) (briefing should contain a "separate concise statement of each error a party contends was made"); RAP 10.3(a)(6) (requiring argument in support of issues presented by review together with citations to legal authority and the record); McKee v. Am. Home Prods. Corp., 113 Wn.2d 701, 705, 782 P.2d 1045 (1989) ("We will not consider issues on appeal that are . . . not supported by argument and citation of authority.").

agreement between the parties. Heights, 148 Wn. App. at 403 (the court resolves "the threshold legal question of arbitrability").

If the reviewing court "can fairly say that the parties' arbitration agreement covers the dispute, the inquiry ends because Washington strongly favors arbitration." Davis v. Gen. Dynamics Land Sys., 152 Wn. App. 715, 718, 217 P.3d 1191 (2009); Mendez v. Palm Harbor Homes, Inc., 111 Wn. App. 446, 454, 45 P.3d 594 (2002). Any doubts regarding the applicability of an arbitration agreement "should be resolved in favor of coverage." Heights, 148 Wn. App. at 405. It is well established that "[i]f the dispute can fairly be said to involve an interpretation of the agreement, the inquiry is at an end and the proper interpretation is for the arbitrator." Meat Cutters Local No. 494 v. Rosauer's Super Markets, Inc., 29 Wn. App. 150, 154, 627 P.2d 1330 (1981).

Here, the CR 2A Agreement clearly states that "[a]ny disputes regarding . . . any unresolved issues shall be submitted to binding arbitration." Cosgrove and Young disagreed about the personal property Cosgrove claimed he was entitled to after the walk through. The parties also disputed the payments due under the Agreement, as well as removal of the wine collection from storage. The court did not err in compelling arbitration of these unresolved disputes.

The case Cosgrove relies on, Satomi Owners Ass'n v. Satomi, LLC, 167 Wn.2d 781, 225 P.3d 213 (2009), is inapposite. In Satomi, the court identified "certain limited exceptions" to the general rule that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute that he has not agreed so to submit.' " Satomi, 167 Wn.2d at 810-11 (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)).

Cosgrove also argues the court erred in confirming the arbitrator's award of attorney fees because the arbitrator improperly relied on the information Mullan provided in response to the subpoena duces tecum. The record does not support Cosgrove's argument.

The Arbitration Decision states, in pertinent part:

RCW 7.04A.210 authorizes an arbitrator to award attorney's fees if such an award is authorized by law in a civil action involving the same claim. RCW 4.84.185 authorizes an award of attorney's fees to the prevailing party in a civil action if it is found that the other party's claim or defense [was] advanced without reasonable cause. The arbitrator finds that a significant portion of Cosgrove's claims and defenses were frivolous or advanced without reasonable cause. In particular, Cosgrove's effort to recover a television he had admitted was a Christmas gift and to assert that his inability to locate some of the items he desired should void the settlement agreement were frivolous claims. The level of litigation of several other claims, including two appellate actions, was vastly disproportionate to the issues involved, particularly given the nominal value of many of these items (T-shirts, empty wooden boxes, pillows). Finally and most dramatically, his decision to empty out the wine storage unit without notice to Plaintiff and subsequent refusal to honestly address the question of the missing wine collection was not in good faith. His actions have needlessly increased the costs of this proceeding and warrant an award of attorney's fees.

In denying the request for reconsideration, the arbitrator expressly addressed Cosgrove's argument that the arbitrator had relied upon excluded evidence. The decision denying reconsideration states, in pertinent part: "None of the materials produced in response to the Subpoena Duces Tecum were admitted into evidence or considered as part of the arbitration decision."

Cosgrove next argues the court erred in granting Young's motion to clarify the order denying her motion to enforce the CR 2A Agreement. Cosgrove contends Young's motion was an untimely motion for reconsideration. The court denied the motion to enforce the CR 2A Agreement on the grounds that "[i]ssues of fact exist

12

regarding interpretation of the CR 2A." After the arbitrator asked the parties to seek clarification, Young filed a motion asking the court to either refer the matter to arbitration, set an evidentiary hearing, or reset the matter for trial.

A court may consider a motion to clarify a prior ruling at any time. Kemmer v. Kieski, 116 Wn. App. 924, 933, 68 P.3d 1138 (2003). "[A]n order 'clarifying' a judgment explains or refines rights already given. It neither grants new rights nor extends old ones." Kemmer, 116 Wn. App. at 933 (citing Rivard v. Rivard, 75 Wn.2d 415, 418, 451 P.2d 677 (1969)). The court's order granting the motion and referring "[t]he entire matter" to arbitration clarified any ambiguity and expressly compels arbitration.[3]

We affirm.[4]

WE CONCUR:

---

[3] Cosgrove argues he did not receive sufficient notice of the motion to enforce the CR 2A Agreement. Brinkerhoff v. Campbell, 99 Wn. App. 692, 994 P.2d 911 (2000), does not hold that a motion to enforce requires 28 days notice. Brinkerhoff, 99 Wn. App. at 696. Cosgrove also argues the judgment for $6,070 violates RAP 7.2. Because the judgment merely consolidates previously ordered attorney fee awards of $4,000 and $2,070, the argument is without merit.

[4] We deny Young's request for fees under RAP 18.1 and 18.9.