# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

PIERCE COUNTY, a political
subdivision of the State of Washington,

Petitioner,

v.

LILLIAN E. and TIM O. SMILEY, wife
and husband;

Respondents,

JPMORGAN CHASE BANK, N.A.;
FIDELITY NAT'L TITLE CO.,

Defendants,

v.

JOSEPH D. VINES, as his separate
estate and SUSAN L. VINES,

Appellants.

No. 77744-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: May 29, 2018

COURT OF APPEALS DIV I
STATE OF WASHINGTON
2018 MAY 29 AM 9: 49
FILED

BECKER, J. — Pierce County condemned a strip of land to create a public trail. The county settled separately with each of two property owners who lost land in the condemnation action. The dispute on appeal is between the two owners; the county is no longer involved in the case. We affirm the trial court's

order requiring one of the owners to give the other an easement, the order disbursing funds, and related orders involving contempt and sanctions.

FACTS

In 1992, Rebecca Vines passed away, leaving her real property in Pierce County to be divided between Lillian Smiley, Joseph Vines, Joetta Smith, and Dorwin Vines. An estate agreement was signed by the four heirs and recorded with Pierce County on December 29, 1992.[1]

Only Joseph Vines' parcel had access to a public road. The estate agreement was contingent on the successful completion of a boundary line revision.[2] The boundary line revision was designed to give each of the other parcels a common easement over the Vines property.[3] The boundary line adjustment establishing the easement was recorded the same day as the estate agreement, establishing a 30-foot-wide private road and utilities easement.[4] The private easement ran through the four parcels, beginning at Smiley's property on the western end, running through Dorwin and Joetta's properties, and ending where Vines' property met the public road. The four heirs signed and executed the boundary adjustment,[5] and they also recorded a road maintenance agreement.[6] Over the next 20 years, Vines acquired the land formerly held by

---

[1] Clerk's Papers at 319-23.
[2] Clerk's Papers at 319.
[3] See Clerk's Papers at 325-26.
[4] Clerk's Papers at 324-28.
[5] Clerk's Papers at 329.
[6] Clerk's Papers at 332-37.

2

Joetta Smith. Dorwin's property was sold to Nathan Noble. For access to her property, Smiley used a private gravel road located on the common easement.

By 2016, Pierce County was expanding a rails-to-trails program that transforms abandoned railroads into public walking paths. The county targeted an abandoned rail line running through the properties owned by Smiley, Noble, and Vines. The rail line ran parallel to the private gravel road. To create a walking path, Pierce County needed to condemn a 20-foot-wide strip adjacent to the rail line, including the 1992 access and utility easement over the private road.

On July 14, 2016, after settling with Noble, the county made an "all-inclusive" offer of $124,650 for the taking or damaging of all property belonging to Smiley and Vines. This amount was broken down as $72,750 for the Smiley interests and $51,900 for Vines.[7]

Vines agreed to the figure of $51,900 on February 19, 2016.[8] Smiley agreed to the figure of $72,750 on July 18, 2016.[9]

Vines agreed that $51,900 was just compensation for all of the property rights associated with his parcel. He agreed to accept his "court-disbursed share of that sum." Vines agreed that title to the condemned interests associated with his parcel would transfer to Pierce County when all necessary signatures had been obtained (including signatures of persons who were not parties to his

---

[7] Clerk's Papers at 424-25.
[8] Clerk's Papers at 339-41.
[9] Clerk's Papers at 467-69.

agreement with the county). Vines stipulated to a judgment reflecting the agreement.[10]

The agreement between Vines and Pierce County contained, in items 8 and 9, terms relevant to this appeal. Item 8 provided that Vines would offer a new 20-foot-wide access and utility easement running alongside the existing easement. This new easement would combine with the remaining 10 feet of width from the existing easement, leaving a new 30-foot-wide access easement to replace the previous easement. If the offer was accepted, Vines was to convey the easement in exchange for $8,450. Item 9 recognized that while Vines intended to construct a new well on his parcel and might use some of the $51,900 to do so, putting in a well was solely the responsibility of Vines "no matter how much of that sum is disbursed to Vines."

> 8. In addition, the Parties agree that Vines will offer to convey an additional 20-foot wide perpetual and non-exclusive easement located immediately south of the existing easement to the owners of the two parcels to the west of tax parcel [number of the Vines parcel] and for the benefit of those parcels. The offered easement must be for the same purposes and of the same scope and duration as the existing easement. The parties further agree that if the offer is accepted, Vines will convey the additional 20-foot wide easement upon payment of a total of $8,450.00, whether paid by one property owner or some combination.
>
> 9. Vines intends to permit and construct a new water well on tax parcel [number of the Vines parcel]. Vines may plan to use some of the sum referenced in Paragraph 4 to do so. The Parties agree that no matter how much of that sum is disbursed to Vines or when it is disbursed, permitting and constructing the well is solely Vines' responsibility, and that Pierce County is not responsible for any loss of water or any damage caused by loss of water to real property owned by Vines.

---

[10] Clerk's Papers at 344.

Pierce County deposited in the court registry the agreed amount of $51,900 for the Vines parcel and took possession. The county and Noble are not involved in the present litigation.

The trial court held a hearing on October 11, 2016. Smiley was represented by counsel at the hearing. Vines was pro se. The court first addressed a motion by Smiley to enforce the term in the Vines agreement (item 8, quoted above) requiring Vines to offer a new 20-foot easement in exchange for $8,450. Smiley brought a check in that amount to the hearing.

Vines objected that Smiley, who was not a party to Vines' agreement with the county, should not be able enforce it. Smiley asserted that she was a third-party beneficiary of the agreement. Vines responded that there was nothing for Smiley to enforce, arguing that the boundary line adjustment recorded in 1992 had not created a valid easement in the first place and even if it did, Smiley had not paid for it.

The court granted Smiley's motion. "Well, we're way beyond going back to the beginning of time. The county has taken the 20-foot easement, and you've entered into an agreement." The court ruled that Smiley was a third-party beneficiary of the Vines-Pierce County agreement and therefore entitled to have Vines convey a new 20-foot easement for Smiley's benefit in exchange for $8,450.

The second issue before the court was how to distribute the $51,900 provided by Pierce County to compensate for the property interests associated with the Vines parcel. Because Noble was not involved in the litigation, only

5

Smiley and Vines were interested in the disbursement of those funds. Smiley claimed a right to some of the $51,900 because the 20-foot strip taken by the county along the private road included her interest in the easement over the land owned by Vines.

Smiley first presented testimony by David Follansbee, a land surveyor. Using documents including the boundary line revision, Follansbee had prepared a survey of record. According to Follansbee, the survey showed where a 30-foot-wide private road and utilities easement existed before the condemnation. Smiley's next witness was Stanley Sidor, an appraiser with expertise in the valuing of corridor easements. Vines did not call any witnesses.

The trial court entered findings of fact and conclusions of law. The court found that Smiley and Vines both had interests in the compensation "for the easement interest acquired by Pierce County" because both had "common ownership of the rights within the former 30 foot wide easement." Vines had sole interest in the compensation awarded "for property interests in the Vines Parcel other than the easement rights." Based on Sidor's valuation testimony, the court awarded Vines $2,900 for the raw value of his condemned land and $11,600 for the cost to build a privacy fence. This left $37,400. This figure, the court found, was the value of the 20-foot-wide corridor easement acquired by Pierce County. The court found at least half of that value "is what a party in Smiley's position would pay for such an easement because the Smileys have no other legally recorded access to a route leading to a public Right-of-Way, whereas the Vines

6

property abuts a route to a public Right-of-Way independent of the easement width taken by Pierce County."

In accord with these findings, the court divided the $37,400 evenly between Vines and Smiley. Altogether Vines received $33,200 for his interests in the raw land and easement, while Smiley received $18,700 for her interest in the easement.

Vines appeals. He contends that he should not have been obligated to convey a 20-foot easement to Smiley and that he should have received the entire $51,900 of compensation provided for his parcel, with none of it going to Smiley.

ORDER ENFORCING SETTLEMENT

Vines assigns error to the order that enforced the settlement agreement between him and Pierce County. The order required Vines to offer to convey, in exchange for $8,450, a 20-foot-wide easement to add onto the 10-foot-wide easement remaining after the county's take. Vines contends he was not obliged to accept Smiley's tender of payment of $8,450 because there was no contract between him and Smiley. He asserts that Smiley's interests were fully compensated through her own agreement with Pierce County by which she accepted $72,750.

A motion to enforce a settlement agreement is reviewed de novo, as though it were a motion for summary judgment. Brinkerhoff v. Campbell, 99 Wn. App. 692, 696-97, 994 P.2d 911 (2000). If issues of material fact remain, they should be resolved by a fact-finding hearing. Brinkerhoff, 99 Wn. App. at 697. Vines contends there were unresolved questions of material fact. But Smiley

7

presented written documentation and expert testimony from a land surveyor to show that a new easement was necessary for Smiley, whereas Vines presented no admissible evidence. The only question regarding the motion to enforce was whether Vines was obligated to offer a 20-foot-wide easement for $8,450. Vines does not dispute that the settlement agreement between Vines and the county expressly called for him for to do so.

It is irrelevant that Smiley agreed to accept $72,750 from the county in compensation for the taking of property interests in her own parcel. The county's agreement with Vines assured that Smiley would continue to have access to a public road by way of a wide enough easement over the Vines parcel, if she chose to pay $8,450 for it. Vines agreed to offer the 20-foot easement and to accept $8,450 in payment if the offer was accepted.

When a contract necessarily requires the promisor to confer a benefit upon a third person, that person is deemed a third-party beneficiary to whom the promisor assumes a direct obligation. Lonsdale v. Chesterfield, 99 Wn.2d 353, 361, 662 P.2d 385 (1983), citing Vikingstad v. Baggott, 46 Wn.2d 494, 496-97, 282 P.2d 824 (1955). Vines offers various theories to avoid the conclusion that Smiley was a third-party beneficiary of the settlement agreement between Vines and Pierce County. None are persuasive, and the scant authority cited by Smiley is not on point. As the trial court told Vines, "The county has taken the 20-foot easement, and you've entered into an agreement." We conclude Vines was under an obligation to confer upon Smiley the benefit Vines promised in his agreement with Pierce County.

8

Vines contends he was surprised by Smiley's motion to enforce the settlement agreement. Smiley noted the motion to enforce for a hearing to be held on October 7. Then, in an e-mail sent to Vines on October 3, 2016, Smiley advised him that the judge had instructed him to move the hearing date to October 11 so all issues could be addressed at the same time. We find no procedural irregularity.

Vines claims that the court order, because it does not mention Noble, only partially achieves the county's objective of assuring Smiley's access to the public road. He contends Noble was an indispensable party who had to be consulted before the court could order Vines to offer a new easement to Smiley. But Noble reached a separate agreement with Vines for the use of the access road. Because Noble's rights are not impacted by the new easement granted to Smiley, Noble was not an indispensable party.

Vines claims that the order compelling him to record an easement was a de facto action for quiet title, and he suggests it must be reversed because the procedures for quiet title were not followed. This argument is not persuasive. The settlement agreement between Vines and Pierce County required Vines to offer an easement to Smiley. The fact that an action for quiet title could produce the same result does not transform a motion to enforce into a motion to quiet title.

The order granting the motion to enforce is affirmed.

Existence of Easement

The court's findings of fact in support of the order disbursing funds state that the case concerns "the value of just compensation for a portion of one

property parcel in which Vines holds title, but in which the Smileys own a common utilities and transportation easement." Vines contends there is insufficient evidence to support a finding that Smiley owned an easement over his property before the condemnation action. As a result, he argues, the court erred by awarding to Smiley $18,700 as compensation for a lost 20-foot-wide portion of an easement that Smiley never owned in the first place.

Vines notes that the 1992 easement was recorded by means of a boundary line adjustment, rather than by deed. He contends that the absence of a recorded deed of conveyance means that the easement is invalid and unenforceable under RCW 64.04.010, which states: "every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed." It does not appear that Vines made this argument to the trial court.

In any event, on appeal Vines cites no authority that would justify overturning the court's finding that Smiley, before the condemnation, had a valid and enforceable easement over the Vines parcel. A trial court's findings of fact will be upheld if they are supported by substantial evidence. Landmark Dev., Inc. v. City of Roy, 138 Wn.2d 561, 573, 980 P.2d 1234 (1999). Substantial evidence supported the court's finding that Smiley owned an easement. Documents and evidence presented by Smiley established that there was a recorded boundary line adjustment signed by Vines that sets forth the easement, and the boundary line adjustment was filed contemporaneously with the estate agreement dividing Rebecca Vines' property. Joetta Smith provided a declaration that Smiley gave

10

consideration in exchange for the easement. For more than 20 years, Smiley openly used the easement to get from her property to the public road. And Vines' settlement agreement with Pierce County acknowledged the existence of the easement. To the extent Vines attempted at trial to refute or undermine the evidence of Smiley's ownership of the easement, his efforts were not compelling. The challenged finding is adequately supported.

Vines also argues that under Pierce County ordinances, an easement may not be created through boundary line adjustments. He cites PCC 18F.70.030(c)(2). Because the ordinance Vines cites did not exist in 1992, it is not relevant to our analysis.

Easement Valuation

The appraiser testified that the value of the common easement over the Vines property that was taken by the county was $37,400. Vines contends the entirety of this amount should have been awarded to him instead of being divided equally between him and Smiley.

The court concluded that Smiley was entitled to disbursement of $18,700, representing the loss she suffered on account of the taking of her interests in the 20 feet of a common utilities and transportation easement width across the Vines parcel. This is not an erroneous conclusion considering the evidence before the court.

The settlement agreement between Vines and the county made clear that Vines was entitled to a "court-disbursed share" of the total compensation of $51,900, not to the entire amount. That Vines was not the only person entitled to

11

a share was also clearly stated in the county's letter of July 14, 2016, to Vines and Smiley:

> Please note that Pierce County is offering to deposit this amount into the Superior Court's registry as compensation to *all* respondents holding any interest in the property. Any respondent will be able to seek disbursement of those funds, based on that respondent's corresponding interest in the property.

Vines assumes that Smiley's own settlement agreement with Pierce County fully compensated her for any losses, including any damage she suffered from the county's taking of the easement on Vines' property. This assumption is incorrect. Smiley's settlement agreement with the county stated the $72,750 settlement was limited to compensation for the condemnation on her parcel of land and her easement on the Noble parcel.[11] It does not mention the Vines property.

As Vines perceives the outcome in the trial court, Smiley received a windfall. Whereas Vines received a total of $33,200 from the money provided by the county, Smiley received a total of $91,450—$72,750 for her interests in her own parcel plus $18,700 for half the value of the lost common easement over the Vines parcel. According to Vines, that equals a windfall of $58,250 over and above what Vines received for Pierce County condemning the same 20 feet, plus the fact that Vines had to convey a new easement to Smiley. The fact that Smiley received a larger sum than Vines does not necessarily mean that the court's distribution decision was unfair. The record includes expert testimony that an easement over Vines' land was more valuable to Smiley than the raw

---

[11] Clerk's Papers at 467-69.

land was to Vines. Without an easement, Smiley would be landlocked after the condemnation, whereas the Vines parcel bordered on a public road.

The issue of a windfall came up briefly during the proceedings on October 11, 2016, when Vines was cross-examining the appraiser. Vine asked, "If the Smileys had a 30-foot road and utility easement restored, would the Smileys still be damaged for easement loss?" The appraiser responded noncommittally. "That's an interesting question. I'd have to study it. I haven't been asked to actually analyze that particular question." At the end of the hearing, Vines proposed that he should receive the entire $51,900 because "any right of claim they may think they have is restored because they have an easement." Vines identifies no evidence in the record that he introduced in support of his proposal. We cannot conclude that Vines' obligation to convey a new 20-foot-wide easement to Smiley in exchange for $8,450 negates the evidence that Smiley deserved to be compensated for loss of 20 feet of the former easement.

Vines argues that the condemned 20-foot-wide strip of the former easement could not be worth the $37,400 assigned by the appraiser because he received only $8,450 for conveying a new 20-foot-wide easement. But the $8,450 figure was established by the agreement between Vines and the county. In negotiating that agreement with Vines, the county was not representing Smiley's interests, nor did the county undertake to determine the easement's fair market value. Thus, the fact that Pierce County and Vines agreed that Vines would convey a new easement for $8,450 does not by itself constitute evidence

13

that the fair market value of Smiley's condemned easement interest was worth $8,450.

Finally, Vines claims the trial court's calculation of damages failed to account for his additional losses, including the cost of relocating a well located on the condemned land. Vines did not present evidence about the well. In closing argument he said, "I think I forgot about the water well. That was $15,000 by itself. I forgot to say that." But as the trial court explained to him, closing argument is not evidence. "I let you make that argument, but I don't have any evidence for that." Also, Vines and the county agreed in item 9 of their agreement that if Vines used some of his compensation to build a new well, he was solely responsible for that project "no matter how much of that sum is disbursed to Vines or when it is disbursed." Vines' argument that his share of the $51,900 should be increased to compensate for building a new well comes too late.

Because the trial court's findings of fact on valuation are consistent with the uncontroverted evidence presented by Smiley, they will not be disturbed on appeal.

ORDER SETTING EASEMENT BOUNDARIES

On October 18, 2016, Vines recorded a survey providing a right of way across his property for Smiley. It was prepared by Delta Surveyors. It differed from the easement prepared for Smiley by Follansbee in that it extended beyond the Vines parcel and provided an easement over the Noble parcel.

14

Smiley filed a motion to set easement boundaries as provided in the survey prepared by Follansbee. Smiley requested CR 11 sanctions. The trial court held a hearing on December 9, 2016. Vines asked the court to accept the boundaries in the easement prepared by Delta Surveyors. Vines felt he was being asked to pay for the Smiley's surveyor when he was already paying his own. The court rejected Vines' request, in part because Vines had not presented any expert testimony supporting the Delta easement. "The Vines admit that their proposed easement exceeds the Court's order and including additional property. The Court finds that the burden is on the party wishing to establish the boundaries[, who] must do so by competent evidence."

The court entered an order granting Smiley's motion. The order provided that the new easement would follow the Follansbee survey provided by Smiley and would be subject to the terms of the mutual road maintenance agreement covering the former easement. Smiley's request for CR 11 sanctions was denied.

Vines argues the court was in error to impose a mutual maintenance obligation because he did not consent to it, he had agreed with Noble to maintain the road without any cost to Smiley, and he wanted to avoid future conflict with Smiley. These alleged grounds of error are unpreserved, as they are not the reasons stated in the brief Vines cites to show that he adequately opposed the motion in the trial court.[12] Vines makes no other argument to show why the road maintenance terms should not have been included in the order. This court does

---

[12] Clerk's Papers at 405, cited by Brief of Appellant at 32 n.113.

not consider inadequately briefed arguments. <u>Norcon Builders, LLC v. GMP Homes VG, LLC</u>, 161 Wn. App. 474, 486, 254 P.3d 835 (2011).

Vines has provided no basis for reversing the order granting Smiley's motion to set boundaries for the easement.

## SUPERSEDEAS BOND

Vines retained counsel after the December 9 hearing. He then filed a notice of appeal on December 27, 2016. On February 8, 2017, Vines filed a supersedeas notice seeking a stay of the December 9 order setting easement boundaries. He alleged that it was not necessary for him to post a bond to stay the trial court's ruling. Smiley filed a memorandum in opposition.

The court held a hearing on February 17, 2017. At the hearing, Vines again tried to convince the court to accept the Delta easement. This time, he provided a supportive expert declaration by Delta surveyor Robert Rogers. In Rogers' opinion, the Delta easement recorded by Vines on October 18, 2016, satisfied the court's order more completely and accurately than the Follansbee easement.[13]

Smiley argued that only the Follansbee survey satisfied the court's earlier orders of October 11 and December 9, 2016. "The only surveyor that anybody had an opportunity to cross examine and vet was the Smileys'." She argued that without a new easement in compliance with the court's previous orders, it was uncertain whether she held more than a 10-foot-wide easement for access, and the uncertainty rendered the property unalienable. Smiley asserted that staying

---

[13] Clerk's Papers at 937-39.

the order would reduce her property value to zero. Accordingly, Smiley proposed a supersedeas bond equal to the total amount of her property, plus an estimated 12-month increase in valuation, altogether totaling $302,500. Over Vines' objection, the trial court set the bond at $302,500.

Vines appeals this ruling. He contends the bond was unnecessary because, with the recording of the Delta easement, Smiley was not landlocked. The fundamental problem, however, was not that Smiley lacked physical access to her property. The problem was that the December court order required Vines to record the easement proposed by the Smileys. The Delta easement does not comply with that order. The discrepancy between the court's order and the Delta easement recorded by Vines potentially created uncertainty about Smiley's legal access to the public road. Delta's survey was not before the trial court at the October or December hearings. We cannot say the trial court erred at the February 17 hearing by refusing to reopen the issues of where the boundaries should be set and how the easement should be described.

Vines also contends the bond was excessive. Except where prohibited by statute, a party may obtain a stay of enforcement of a decision affecting rights to ownership of real property by filing a supersedeas bond in the trial court. RAP 8.1(b)(2). "A trial court's supersedeas bond amount determination is reviewed for an abuse of discretion." IBEW Health & Welfare Tr. of Sw. Wash. v. Rutherford, 195 Wn. App. 863, 866, 381 P.3d 1221 (2016).

Setting the supersedeas bond equal to a potential decrease in property value was not manifestly unreasonable. The trial court did not abuse its discretion by setting the supersedeas bond at $302,500.

Vines contends that he was excused from posting a supersedeas bond by RCW 8.08.080.[14] When a county condemns land, that statute allows the condemnee to appeal the amount of the compensation judgment without posting a bond. RCW 8.08.080. It does not excuse a condemnee from posting a bond when appealing an order to grant an easement to a third party.

## CONTEMPT AND CR 11 SANCTIONS

Vines decided against posting the supersedeas bond required by the trial court. Instead, he executed a copy of the court ordered Follansbee easement. But he did so only after writing "under protest and without waiving rights on appeal" on the document.[15] Smiley asked Vines to execute an easement document exactly as ordered without the handwritten notation.[16]

---

[14] Either party may seek appellate review of the judgment for compensation of the damages awarded in the superior court within thirty days after the entry of judgment as aforesaid, and such review shall bring before the supreme court or the court of appeals the propriety and justice of the amount of damage in respect to the parties to the review: PROVIDED, That upon such review no bonds shall be required: AND PROVIDED FURTHER, That if the owner of land, real estate, or premises accepts the sum awarded by the jury or the court, he or she shall be deemed thereby to have waived conclusively appellate review, and final judgment by default may be rendered in the superior court as in other cases.
RCW 8.08.080.
[15] Clerk's Papers at 1162-63.
[16] Clerk's Papers at 1165-66.

On March 30, 2017, Smiley filed a motion to hold Vines in contempt for his failure to record a clean easement as required by the trial court's December 9, 2017, order setting easement boundaries. Smiley cited RCW 7.21.010(b) as authority for holding Vines in contempt. She asked the court to assess "coercive terms" against Vines to compensate for the attorney fees and costs expended in bringing and hearing the motion. A show cause hearing was noted.

On April 5, 2017, Vines responded by denying that he was in contempt. He claimed the "under protest" notation was needed to preserve his rights on appeal. Vines requested a court order "affirming that execution of the 'Access and Utility Easement' does not constitute a waiver of the Vines rights on appeal to contest the validity of the orders entered or to contest the actual validity of the 'Access and Utility Easement.'"[17]

The next day, Smiley filed a reply memorandum claiming that Vines' position was meritless. She claimed "it is positively disingenuous and violates CR 11 for the Vines' attorney to state '[t]he Vines have complied with the orders of the court.'"[18] Separately, Smiley moved under CR 11 for the fees she had incurred for drafting the reply memorandum.[19]

On April 12, 2017, Vines claimed that Smiley's request for CR 11 sanctions was baseless. He requested CR 11 sanctions against Smiley.[20]

---

[17] Clerk's Papers at 1241-46.
[18] Clerk's Papers at 1288-93.
[19] Clerk's Papers at 1298-99.
[20] Clerk's Papers at 1300-03.

The show cause hearing occurred on April 14, 2017. The trial court granted Smiley's motion to hold Vines in contempt but did not impose coercive terms as sought by Smiley. Vines was ordered to execute the access and utility easement without notation. The court imposed CR 11 sanctions totaling $2,524.60 jointly and severally against Vines and his attorney for the time Smiley's attorney spent replying to Vines' response.[21] Vines assigns error to these orders.

This court reviews CR 11 sanctions for abuse of discretion. Biggs v. Vail, 124 Wn.2d 193, 197, 876 P.2d 448 (1994). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). An order of contempt is likewise reviewed for the abuse of discretion. King v. Dep't of Soc. & Health Servs., 110 Wn.2d 793, 798, 756 P.2d 1303 (1988).

"Courts should employ an objective standard in evaluating an attorney's conduct, and the appropriate level of pre-filing investigation is to be tested by 'inquiring what was reasonable to believe at the time the pleading, motion or legal memorandum was submitted.'" Biggs, 124 Wn.2d at 197, quoting Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 220, 829 P.2d 1099 (1992). Vines was instructed by the trial court to record the easement on three separate occasions; first as part of the order to enforce the settlement agreement on October 11, 2016; then as part of the order setting easement boundaries on December 9,

---

[21] Clerk's Papers at 1314-18.

2016; and finally, as part of the hearing on the supersedeas bond on February 17, 2017. Vines recorded an easement that did not comply with the courts orders and tried to get the court to accept it. He was not sanctioned for this conduct. He was sanctioned because when he finally recorded a proper easement, he wrote "under protest" on the document. A reasonable prefiling investigation would have revealed that the handwritten note was not necessary to preserve Vines' right to appeal and that it could negatively impact the alienability of Smiley's property. Instead of correcting his error after receiving notice of potential CR 11 sanctions, Vines went further by requesting CR 11 sanctions against Smiley. The trial court was within its discretion to find Vines' conduct unreasonable.

Vines argues that his refusal to record a clean easement was justified for two reasons. First, he points out there was a scrivener's error in the trial court's order setting easement boundaries.[22] Second, he notes that the court order included a statement that Vines' execution of an easement ordered by the court "is without prejudice to the Vines' appellate rights, and may not be interpreted as a waiver of their rights on appeal to challenge the underlying order and easement."[23]

Vines argues that he could not have violated CR 11 in view of the fact that the order holding him in contempt actually ruled in his favor. Neither of these

---

[22] See stipulation and agreed order correcting scrivener's error in exhibit 1 to the court's December 2016 order. Clerk's Papers at 1319.
[23] Clerk's Papers at 1316.

considerations justified Vines' refusal to record a clean easement in the first place.

Vines argues that the finding of contempt was erroneously entered because the court did not offer him or his attorney an opportunity to mitigate or purge the contempt before imposing sanctions. See In re Marriage of Didier, 134 Wn. App. 490, 501-02, 140 P.3d 607 (2006), review denied, 160 Wn.2d 1012 (2007). Vines misstates the facts. The trial court did not impose monetary sanctions against Vines for contempt. Rather, the court imposed CR 11 sanctions because Vines' response to Smiley's motion for contempt was without merit. The $2,524.60 was the cost of reasonable attorney fees for the Smiley's reply.

We conclude the trial court did not err in holding Vines in contempt or by imposing CR 11 sanctions. Nor did the court abuse its discretion, as Vines alleges, in refusing to impose sanctions against Smiley. Smiley had a reasonable basis for requesting CR 11 sanctions against Vines.

Smiley asks this court to impose sanctions against Vines under RAP 18.9(a) for raising frivolous claims in his appellate brief. We decline the request.

Affirmed.

Becker, J.

WE CONCUR:

Mann, A.C.J.

Cox, J.

22