[No. 29220-0-I. Division One. April 26, 1993.]

EVAN MORRIS, *Respondent,* v. THOMAS R. MAKS, ET AL, *Appellants.*

---

866

*Dennis J. Dunphy, Phillip S. Miller,* and *Ferguson & Burdell* (*James C. Chaney* and *Jacqua & Wheatley,* of counsel), for appellants.

*James S. Irby* and *Karr Tuttle Campbell,* for respondent.

BAKER, J. — In this case we are asked to decide whether the trial court erred in enforcing a settlement agreement under CR 2A and RCW 2.44.010. We hold that the trial court did not abuse its discretion in enforcing the settlement agreement and therefore affirm.

## FACTS

Evan Morris is a partner in the limited partnership TRM, a lumberyard. In February 1990 Morris sued the general partner of TRM, Thomas Maks, claiming Maks breached his fiduciary duty as a general partner.

In June and July 1991, the parties discussed settling the case. On July 18 Maks' attorney, Phillip Miller (Miller), phoned Morris' attorney, James Irby (Irby), to confirm the details of a settlement agreement that was under consideration. During that conversation, the attorneys discussed approximately seven major points concerning the settlement. According to Irby, Miller told him that the settlement agreement was acceptable to Maks subject to approval by Maks' tax adviser.

Miller contacted Irby the following day and indicated that the tax consequences of the settlement agreement were acceptable to Maks. According to Irby, he asked Miller to confirm that they had a settlement agreement and reviewed each of the points with Miller. Miller "agreed that [they] had a settlement agreement and confirmed each of the points." Irby then prepared a confirmation letter dated July 19, 1991.

By letter dated July 25, 1991, Miller responded to Irby's July 19 confirmation letter and stated in part, "[e]xcept as specifically set forth below, your letter accurately reflects the terms of the agreed settlement. I view the items listed below

as clarifying or supplemental points rather than conflicts with your letter."

On August 7, 1991, after a different tax accountant advised Maks that the settlement as structured would have extremely detrimental tax consequences for Maks, Miller informed Irby that his client was terminating the settlement negotiations. The trial court subsequently entered an order enforcing settlement according to the terms set forth in the July 19 and July 25 letters.

I

In Washington a trial court's authority to compel enforcement of a settlement agreement is governed by Superior Court Civil Rule 2A and RCW 2.44.010. CR 2A provides as follows:

> No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

RCW 2.44.010 similarly provides:

> An attorney and counselor has authority:
> (1) To bind his client in any of the proceedings in an action or special proceeding by his agreement duly made, or entered upon the minutes of the court; but the court shall disregard all agreements and stipulations in relation to the conduct of, or any of the proceedings in, an action or special proceeding unless such agreement or stipulation be made in open court, or in presence of the clerk, and entered in the minutes by him, or signed by the party against whom the same is alleged, or his attorney[.]

■ We review the trial court's decision to enforce a settlement agreement pursuant to CR 2A and RCW 2.44.010 under the abuse of discretion standard. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). An abuse of discretion occurs when a decision of the trial court is manifestly unreasonable or based on untenable grounds or reasons. *Holbrook v. Weyerhaeuser Co.*, 118 Wn.2d 306, 315, 822 P.2d 271 (1992).

■ ■ Settlement agreements are governed by general principles of contract law. *Stottlemyre v. Reed*, 35 Wn. App.

169, 171, 665 P.2d 1383, *review denied*, 100 Wn.2d 1015 (1983). In determining whether informal writings such as letters are sufficient to establish a contract even though the parties contemplate signing a more formal written agreement, Washington courts consider whether (1) the subject matter has been agreed upon, (2) the terms are all stated in the informal writings, and (3) the parties intended a binding agreement prior to the time of the signing and delivery of a formal contract. *Loewi v. Long*, 76 Wash. 480, 484, 136 P. 673 (1913).

In *Bryant v. Palmer Coking Coal Co.*, 67 Wn. App. 176, 834 P.2d 662 (1992), *review denied*, 120 Wn.2d 1027 (1993), we recently considered whether a settlement agreement negotiated by the parties was enforceable under CR 2A and RCW 2.44.010. In that case, the alleged agreement was not stipulated on the record in open court, nor was there a writing signed by the party to be bound. We held that in light of the underlying purpose of CR 2A and RCW 2.44.010, which is to avoid disputes regarding the existence and terms of settlement agreements, the settlement agreement was unenforceable because the procedures set forth in CR 2A and RCW 2.44.010 were not followed.

In this case, the settlement agreement is set forth in writings exchanged by the parties, including a letter signed by the party to be bound. However, Maks argues that the trial court erred in enforcing the settlement agreement according to the terms set forth in the letters, because the letters did not contain all the material terms of the settlement, and because he did not intend to be bound by any writing short of a formal written settlement agreement.

Material Terms. Maks first argues that the July 19 and 25 letters do not constitute a binding settlement agreement because they do not address material terms to the agreement, such as warranties, outstanding liabilities, and the form of the lease agreement.

We disagree. The July 25 letter from Miller to Irby stated that the July 19 letter accurately reflected the terms of the

agreed settlement. The July 19 letter[1] addresses the issue of liabilities by providing that Morris will assume all TRM liabilities and Maks will assume all Maks Wood Products liabilities. The letter likewise contains a provision regarding termination of the lease agreement which is in all material respects the same as the lease provisions in the subsequent drafts of the settlement agreement. Thus, while the drafts of the settlement agreement dated after July 25 are more detailed than the July 19 letter, the subsequent refinements of the parties' respective liabilities and the lease agreement did not materially alter the agreement.[2]

Intent of the Parties To Be Bound. Maks next argues that the July 19 and July 25 letters do not constitute a binding agreement because he did not intend to be bound by any document other than a "definitive" or "final" settlement agreement. However, the evidence supports the trial court's conclusion that the parties reached a settlement agreement

---

[1]The July 19 letter to Miller states: ". . . This will confirm your assurance to me that Tom Maks has agreed to this settlement and I have confirmed Evan Morris' approval.

"The settlement points are as follows:

"1. Evan Morris will transfer his entire interest in Maks Wood Products to Tom Maks or assigns.

"2. Tom Maks and Maks, Inc. will each transfer their entire ownership interest in TRM to Evan Morris or assigns.

"3. Evan Morris will assume all TRM liabilities.

"4. Tom Maks will assume all Maks Wood Products liabilities.

"5. Evan Morris will pay $110,000 in cash to Tom Maks at closing.

"6. Evan Morris or assigns will receive all of the TRM assets, except for the following, which will be retained by Tom Maks:

". . . .

"7. Evan Morris will transfer to Tom Maks his ownership interest in Maks Sawmill, Inc., . . . the Sawmill's existing lease . . . will be terminated and in lieu of the lease the parties will enter into a one year rental/storage agreement which shall permit the Sawmill equipment to be stored on the property but will not permit the tenant to use the property for any other purpose. . . .

"8. Ferguson & Burdell's fees through July 3, 1991 will be paid by TRM."

[2]We agree with the trial court that the issue of warranties was not material to the agreement. The warranties contained in subsequent drafts of the settlement agreement do not confer upon the parties rights they would not otherwise have under the law.

and intended to be bound according to the terms outlined in the July 19 and 25 letters.

First, the July 19 letter expressly states, "[t]his will confirm your assurance to me that Tom Maks has agreed to this settlement and I have confirmed Evan Morris' approval." Second, the July 25 letter written by Maks' attorney stated that the July 19 letter accurately reflected the terms of the agreed settlement. Finally, Maks represented to the bank on July 24 that he had settled the case with Morris. In a letter signed and acknowledged by Maks, the bank officer states:

> It is our understanding that you and Evan Morris have reached a settlement, the outline of which is provided in a letter dated July 19, 1991, from Jim Irby to Phil Miller. Jim has informed me that the actual settlement agreement will not be completed and signed until after he returns from vacation, July 29.

Maks, however, contends that his intent to be bound only upon execution of a final settlement agreement is evidenced by his affidavit and the parties' repeated references to the drafting of a formal settlement agreement. In his affidavit, Maks states in part as follows:

> I agreed to those general terms, but did not intend to be bound to those general terms until a written agreement was drafted which would resolve all the various details of the settlement. . . . I did not intend to be bound by any proposed settlement agreement until all the details had been worked out to my satisfaction.

While the determination of whether the terms of a settlement are disputed is appropriately handled by affidavit, the affiant must in addition come forth with evidence demonstrating the existence of a dispute regarding the material terms of the agreement or the intent to be bound thereby. In this case, Maks' subjective intent to be bound only upon execution of the final settlement agreement is expressed nowhere in the exchange of correspondence between the parties.

> The Washington court has long adhered to the objective manifestation theory in construing the words and acts of alleged contractual parties. We impute to a person an intention corresponding to the reasonable meaning of his words and acts.

Unexpressed intentions are nugatory when the problem is to ascertain the legal relations, if any, between two parties.

*Plumbing Shop, Inc. v. Pitts*, 67 Wn.2d 514, 517, 408 P.2d 382 (1965).

■ Maks next points to the repeated references to the parties' intent to draft a "definitive" or "final" settlement agreement as evidence of their intent that settlement was contingent upon the drafting of a formal settlement agreement. However, the fact that the parties contemplated drafting a formal settlement agreement does not necessarily mean that they intended to be bound only upon execution of that document. As the court stated in *Loewi*:

> If the subject-matter is not in dispute, the terms are agreed upon, and the intention of the parties plain, then a contract exists between them by virtue of the informal writings, *even though they may contemplate that a more formal contract shall be subsequently executed and delivered.*

(Italics ours.) *Loewi*, 76 Wash. at 484. We therefore hold that Maks has failed to demonstrate that the intent of the parties to be bound was a material disputed fact.

Under *Loewi* the July 19 and 25 letters were sufficient to establish a binding settlement agreement even though the parties contemplated a more formal written agreement because (1) the subject matter was agreed on, (2) the material terms were stated in the letters, and (3) the evidence supports the finding that the parties intended to be bound by the letters. Accordingly, the trial court did not abuse its discretion in enforcing the settlement agreement under CR 2A and RCW 2.44.010.

Affirmed.

WEBSTER, C.J., and GROSSE, J., concur.

Review denied at 122 Wn.2d 1020 (1993).