FILED
COURT OF APPEALS
DIVISION II

2014 APR -1 AM 9: 23

STATE OF WASHINGTON

BY_____
DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ERIC R. ENGELLAND, and CHARLENE C. ENGELLAND, a marital community, | No. 43420-2-II |
| Appellants, | |
| v. | |
| FIRST HORIZON HOME LOANS, a division of FIRST TENNESSEE BANK NATIONAL ASSOCIATION, a District of Columbia corporation licensed to do business in Washington state, and QUALITY LOAN SERVICE CORP. OF WASHINGTON, a Washington state corporation, | UNPUBLISHED OPINION |
| Respondents. | |

WORSWICK, C.J. — In this mortgage dispute, Eric and Charlene Engelland (collectively, Engelland) appeal from an order enforcing a settlement agreement with First Horizon Home Loans. Engelland argues that the trial court erred by (1) ruling that the parties entered into the settlement agreement and (2) awarding attorney fees to First Horizon. We agree that the trial court erred, vacate its order enforcing settlement and attorney fee award, and remand for further proceedings. We further deny each party's request for attorney fees on appeal.

No. 43420-2-II

## FACTS

A.    *Background*

In two loans from First Horizon, Engelland borrowed a total of $810,000 to finance the purchase of and improvements to residential property in Silverdale, Washington.[1]  Both loans were secured with deeds of trust in the property.  First Horizon assigned servicing of the loans to Nationstar Mortgage.

Engelland and First Horizon executed a loan modification agreement in 2007 and a special forbearance agreement in 2009.  But Engelland defaulted, and a trustee's sale was scheduled for June 17, 2011.

On June 6, 2011, Engelland commenced this action by filing a six-count complaint against First Horizon, alleging (1) wrongful institution of a non-judicial foreclosure;[2] (2) violations of the Consumer Protection Act, chapter 19.86 RCW; (3) breach of contract; (4) unjust enrichment; (5) promissory estoppel; and (6) fraud in the inducement.  On June 15, Engelland moved for a temporary restraining order to restrain the trustee's sale.  After a contested hearing, the trial court restrained First Horizon from conducting the trustee's sale until July 1.

---

[1] The first loan was for $650,000 and the second for $160,000.

[2] Engelland also named Quality Loan Service Corp. of Washington as a defendant and alleged it was liable under this count.  But Engelland stipulated to the dismissal of Quality Loan with prejudice.  Quality Loan is not a party to this appeal.

On June 20, Engelland further moved for a preliminary injunction restraining the trustee's sale. The trial court denied this motion and Engelland's subsequent motion to reconsider.

On August 2, Engelland filed a first notice of appeal, which was treated as a petition for discretionary review, seeking our review of the order denying the preliminary injunction. Later, on December 21, the parties stipulated that they had "reached an understanding on the underlying dispute."[3] Br. of Resp't., App. A at 1 (Joint Mot. for Withdrawal/Dismissal of Pet. for Discretionary Review, *Engelland v. First Horizon Home Loans*, No. 42440-1-II (Wash. Ct. App. Dec. 21, 2011)). Based on that stipulation, our commissioner dismissed Engelland's petition for discretionary review. *See* RAP 18.2.

B.     *Communications Regarding a Settlement Agreement*

Shortly after Engelland sought discretionary review, counsel for both parties began negotiating a settlement agreement to (1) resolve Engelland's claims against First Horizon and (2) modify both loans. During these negotiations, the trustee's sale was postponed and ultimately cancelled.

On August 10, 2011, First Horizon's counsel, Andrew Yates, transmitted a financial worksheet that reflected its offer to modify the first loan only. On August 12, Engelland's attorney, Chad Ahrens, replied with a counteroffer to modify both loans and to dismiss

_____

[3] It is clear that at the time of this stipulation, the parties had not executed an agreement settling the underlying dispute.

Engelland's claims. Over several weeks that followed, First Horizon developed a counterproposal.

After a phone call between counsel on September 26, Ahrens confirmed by e-mail that Engelland "authorized me to request that we proceed to draft settlement documents based on the terms discussed." Clerk's Papers (CP) at 59. Ahrens and Yates also agreed to execute a "CR 2A agreement" if it was necessary. CP at 58-59.

On October 12 and again on October 19, Ahrens asked when Yates planned to transmit the settlement documents they had discussed. On November 28, Yates transmitted two documents on behalf of First Horizon: (1) a draft loan modification agreement addressing the first loan only and (2) a draft settlement agreement addressing Engelland's claims and the second loan. Yates noted that the draft settlement agreement "contemplate[d] a $250 payment by your clients on Dec. 1," which was three days away. CP at 61.

By December 27, First Horizon had not received a response. Yates e-mailed Ahrens, "If I do not hear from you in writing tomorrow I will assume that [Engelland] does not accept the proposed loan modification and settlement and we will seek appropriate relief from the court and advise the trustee accordingly." CP at 75. The following day, Ahrens responded by (1) proposing changes to the draft settlement agreement and (2) stating that Engelland requested no changes to the loan modification agreement. Ahrens further wrote,

> While my clients intend on proceeding with the settlement and corresponding release documents, please note that, until such time as the settlement agreement is executed, they proceed without waiver of any rights afforded by the law .... I mention this particularly in light of your reference to non-judicial foreclosure

below and not because I anticipate that my clients will fail to proceed with settlement.

CP at 74.

On January 18, 2012, Yates e-mailed Ahrens a "redline" version of the proposed settlement agreement. CP at 88. The redline version included some of Engelland's proposed changes, but it excluded others that were unacceptable to First Horizon.

On February 3, Yates also e-mailed a completely revised loan modification agreement containing new commencement dates and terms that were "slightly more favorable to [Engelland]."[4] CP at 101. Unlike the draft that preceded it, the revised loan modification agreement was prepared by Nationstar, the loan servicer.

Nationstar communicated directly with Engelland while Ahrens and Yates were negotiating on behalf of their clients. In August 2011, a Nationstar representative called Engelland to discuss a potential loan modification and followed up by e-mailing Engelland an application. Ahrens asked Yates to confirm that First Horizon—not Nationstar—would handle any loan modification. Yates asked First Horizon "to confirm and clarify," but the record does not show whether First Horizon did so. CP at 165.

Further, in January 2012, Nationstar sent Engelland a mortgage loan statement showing, among other things, a negative escrow balance of $33,566. Although Engelland had expected that the loan modification agreement would capitalize the negative escrow balance, Nationstar's

---

[4] The revised loan modification agreement contained a significantly lower interest rate beginning in the seventh year and continuing until maturity.

statement caused Engelland to question whether his potential settlement agreement with First Horizon would prevent Nationstar from collecting on the negative escrow balance. According to Engelland, inconsistent information provided by First Horizon and Nationstar "contribute[d] to our overall lack of trust in dealing with [First Horizon] and [explained] why we insist on any proposed settlement agreement including clear and express terms." CP at 178.

On February 13, Yates e-mailed Ahrens and declared, "[W]e need to get the settlement agreement and loan mod executed this week." CP at 129. On February 17, Ahrens replied,

> [M]y clients have authorized me to indicate that they will execute the attached versions of the settlement agreement and loan modification agreement (provided that the settlement agreement dates are [again] updated, e.g. payment to commence 3/1/12) as soon as the negative escrow balance is addressed. In the interest of expediting resolution and anticipating that the escrow balance will be accounted for and addressed in short order by [First Horizon], I will have [Engelland] execute a clean version of the settlement agreement (with adjusted dates) and loan modification agreement to be released upon resolution of the above escrow impound issue.

CP at 128.

In a February 27 phone conversation between Ahrens and Ronald Beard, another attorney representing First Horizon, Beard answered each of Ahrens's remaining questions about the terms of the settlement agreement and the status of the negative escrow balance. Yates then transmitted an updated settlement agreement to Ahrens and requested that Engelland sign "ASAP." CP at 128. The updated settlement agreement called for monthly payments to begin "March 1, [2012]," and stated that the agreement would take effect upon delivery of signed copies. CP at 133

In an e-mail also sent February 27, Ahrens thanked Beard for addressing the negative escrow balance issue and further replied, "While I can't promise producing [Engelland's] signatures today, I can promise that I'll get back to you by the end of the day." CP at 141. But Ahrens did not get back to Beard and did not produce Engelland's signature on the updated settlement agreement.

On March 12, Beard e-mailed Ahrens to state that all issues were resolved and to ask, "Why do you continue to delay finalizing this settlement when all of the terms are agreed?" CP at 141. In a phone call with Yates later that day, Ahrens stated for the first time that Engelland wanted to delay the commencement date for payments until June 1.[5]

By e-mail, Yates responded that First Horizon considered June 1 unacceptable and would therefore "file a motion to enforce these agreements." CP at 144. Ahrens denied that any settlement agreement had been executed because none of the parties signed it, none of the attorneys for the parties signed it, and Engelland had not authorized Ahrens to sign it.

Ahrens further insisted that Engelland's concern about the negative escrow balance was a legitimate concern about "the mixed and confusing communications our clients have received from [First Horizon] and Nationstar." CP at 173. Lastly, Ahrens repeated his proposal of a settlement agreement and loan modification agreement with payments to commence June 1. It appears from the record that counsel for First Horizon did not respond.

---

[5] Engelland later averred that June 1 was an appropriate date because his wife had begun receiving aggressive treatment for cancer.

No. 43420-2-II

C.    *The Trial Court's Order Enforcing Settlement*

First Horizon moved to enforce the settlement agreement, asserting that the parties "have reached a full and final agreement to settle this case" but that Engelland "simply refuse[d]" to execute the agreement as promised. CP at 27-28. After hearing argument from counsel, the trial court determined on the basis of declarations and attached documents that the parties executed both the loan modification agreement and the settlement agreement as of March 1, 2012.

The trial court explained,

> The February 17th e-mail from Mr. Ahrens bound his clients to the agreement once the escrow issue was settled. That [agreement] had a March 1st commencement date. It was as clear as anything from a lawyer in negotiations can be clear that this was the agreement except [as to] the escrow issue. The escrow issue was resolved [eventually]. . . . Consequently, there is a deal, and I am going to hold that the Engellands are bound to it.

Verbatim Report of Proceedings (VRP) (Apr. 2, 2012) at 29. Observing that Engelland had already missed two payments due March 1 and April 1, the trial court further directed First Horizon to make a "reasonable accommodation for their missed payments." VRP (Apr. 2, 2012) at 30.

In addition, First Horizon requested attorney fees pursuant to the settlement agreement's attorney fee provision. The trial court awarded First Horizon $7,380 in reasonable attorney fees incurred in enforcing the settlement agreement.

Engelland appeals.

8

ANALYSIS

## I. ENFORCEABILITY OF THE SETTLEMENT AGREEMENT

Engelland argues that the trial court erred by enforcing the settlement agreement because the agreement was not properly executed. First Horizon disputes this claim and further argues, as a threshold matter, that Engelland is equitably estopped from denying the existence of an enforceable settlement agreement. We reject First Horizon's threshold argument and agree with Engelland that the trial court erred by enforcing the settlement agreement.

A. *Equitable Estoppel*

First Horizon argues that Engelland is equitably estopped from denying the existence of an enforceable settlement agreement because Engelland stipulated to the dismissal of his petition for discretionary review.[6] We disagree.

Equitable estoppel allows a court to hold a party to a representation it made when inequitable consequences would otherwise result to another party who has justifiably and in good faith relied on the representation. *Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78, 81, 530 P.2d 298 (1975). Equitable estoppel has three elements: (1) an admission, statement, or act that is inconsistent with a subsequent assertion; (2) an action by another party in reasonable reliance on the admission, statement, or act; and (3) an injury that the relying party would suffer if the admission, statement, or act were repudiated. *Colonial Imp., Inc. v. Carlton Nw., Inc.*, 121

---

[6] First Horizon also asserts that equitable estoppel applies because Engelland "disavow[ed] the agreement to settle," but this assertion presumes that the parties had a binding agreement. Br. of Resp't at 30. We address that issue below.

Wn.2d 726, 734, 853 P.2d 913 (1993). The party claiming that equitable estoppel applies bears the burden of establishing each element by clear, cogent, and convincing evidence. *Colonial Imports*, 121 Wn.2d at 734, 736.

Because First Horizon did not raise equitable estoppel in the trial court, the trial court made no findings as to the elements of equitable estoppel. Although RAP 2.5(a) allows us to affirm the decision below on any ground supported by the record, First Horizon invites us to make our own findings as to each element. But it is not the role of an appellate court to find facts. *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). Therefore First Horizon's equitable estoppel claim is not an alternative ground on which we may affirm the judgment below.

B.       *Execution of the Settlement Agreement*

Engelland argues that the trial court erroneously enforced the settlement agreement because (1) there was a genuine factual issue as to whether the parties reached a complete and final agreement and (2) the execution of any settlement agreement did not comply with CR 2A and RCW 2.44.010. We agree with Engelland's first contention and do not reach the second.

When a motion to enforce a settlement agreement relies on affidavits or declarations, the trial court considers the motion according to summary judgment procedures. *Condon v. Condon*, 177 Wn.2d 150, 161, 298 P.3d 86 (2013); *see* CR 56(c) (summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law). Thus the moving party bears the burden of showing that there is no genuine dispute as

to the settlement agreement's existence and its material terms.[7] *Condon*, 177 Wn.2d at 162. The trial court must decide whether, viewing the evidence in the light most favorable to the nonmoving party, reasonable minds could reach only one conclusion. *Condon*, 177 Wn.2d at 162. When genuine issues of material fact exist, the trial court abuses its discretion if it fails to hold an evidentiary hearing to resolve the factual issues.[8] *Condon*, 177 Wn.2d at 162 n.4.

We review the trial court's decision on this motion de novo.[9] *Condon*, 177 Wn.2d at 162. Thus we engage in the same inquiry as the trial court. *TracFone Wireless, Inc. v. Dep't of Revenue*, 170 Wn.2d 273, 280-81, 242 P.3d 810 (2010).

Engelland argues that a genuine issue of material fact exists as to whether the parties reached a final settlement agreement because they did not resolve the commencement date for payments and because First Horizon did not satisfy Engelland's concerns about the negative

---

[7] First Horizon claims that (1) it met its burden and (2) Engelland then failed to produce specific evidence sufficiently rebutting its contentions and disclosing a genuine factual dispute. Because we decide that First Horizon failed to meet its initial burden, we do not decide whether Engelland provided a sufficient rebuttal.

[8] The trial court did not conduct an evidentiary hearing here.

[9] First Horizon concedes that the summary judgment standard applies. But, citing two non-binding cases, First Horizon also asserts that enforcement of a settlement agreement is essentially "an action for specific performance that is reviewed for an abuse of discretion." Br. of Resp't at 12 n.8 (citing *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 704 (9th Cir. 1989) and *Morris v. Maks*, 69 Wn. App. 865, 868, 850 P.2d 1357 (1993)). We disagree with this assertion because our Supreme Court's decision in *Condon* clarified that de novo review is appropriate and the abuse of discretion standard does not apply. 177 Wn.2d at 161-62 n.4.

escrow balance.[10] In response, First Horizon claims that the parties' informal e-mails show that they executed an agreement despite the absence of a signed formal document. We agree with Engelland.

Settlement agreements are contracts. *Riley Pleas, Inc. v. State*, 88 Wn.2d 933, 937-38, 568 P.2d 780 (1977). To form a contract, the parties must objectively manifest their mutual assent to the definite terms of an offer. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177-78, 94 P.3d 945 (2004). Whether there was mutual assent is a question of fact. *Keystone*, 152 Wn.2d at 178 n.10. An enforceable contract is distinguished from an unenforceable agreement to agree, i.e., "'an agreement to do something which requires a further meeting of the minds of the parties and without which [the contract] would not be complete.'" *Keystone*, 152 Wn.2d at 175-76 (quoting *Sandeman v. Sayres*, 50 Wn.2d 539, 541-42, 314 P.2d 428 (1957)).

On February 17, 2012, Ahrens represented that Engelland would sign the settlement agreement if two conditions were met: (1) the commencement date was changed to March 1 and (2) the negative escrow balance was "addressed." CP at 128. On February 27, First Horizon's attorneys sent Ahrens an updated settlement agreement containing a March 1 commencement date, stated that the negative escrow balance would be capitalized, and requested that Engelland

---

[10] For the first time in his reply brief, Engelland also argues that the settlement agreement was not executed in accordance with the statute of frauds, RCW 19.36.010. But an issue raised for the first time in a reply brief is too late to warrant consideration. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

sign "ASAP." CP at 128. But First Horizon did not receive a signed copy from Engelland, and Engelland did not make a payment on March 1.

Viewed in the light most favorable to Engelland, the record shows that the parties did not form a contract for two reasons. First, Ahrens's February 17 e-mail was not an offer of definite terms but instead an agreement to agree on the status of the negative escrow balance. Second, Engelland did not accept First Horizon's February 27 offer by commencing payments on March 1 or otherwise manifesting his assent to the offer.

Claiming that the parties' informal e-mails show the execution of a binding agreement to settle, First Horizon relies on the three-part test stated in *Morris v. Maks*, 69 Wn. App. 865, 869, 850 P.2d 1357 (1993).[11] But the *Morris* test is unavailing to First Horizon.

According to *Morris*, even when the parties contemplated signing a formal written agreement, informal writings are sufficient to establish a binding contract when "(1) the subject matter has been agreed upon, (2) the terms are all stated in the informal writings, and (3) the parties intended a binding agreement prior to the time of the signing and delivery of a formal contract." *Morris*, 69 Wn. App. at 869 (citing *Loewi v. Long*, 76 Wash. 480, 484, 136 P. 673 (1913)). But here, the third element is lacking because the parties expressly did *not* intend a

---

[11] First Horizon also relies on an unpublished federal decision, *McKelvey v. Am. Seafoods*, No. C99-2108L, 2000 WL 33179292 (W.D. Wash. Apr. 7, 2000). But under GR 14.1(b), a party may cite another jurisdiction's unpublished decision only if two conditions are met: (1) the jurisdiction's rules permit citations to its unpublished decisions and (2) the party files a copy of the decision along with its brief. Neither condition is met here. *See* FED. R. APP. P. 32.1(a) (permitting citation to unpublished federal decisions issued in 2007 or later). Therefore First Horizon has violated GR 14.1(b) and we refuse to consider the unpublished case. *Condon*, 177 Wn.2d at 165-66.

binding agreement prior to the delivery of a signed formal contract. Instead, the unsigned settlement agreement provided that "this Agreement shall not be effective until all of the Settling Parties have signed the Release Agreement, and the various counterparts are delivered to all Settling Parties and/or their respective counsel." CP at 203.

First Horizon's argument is unpersuasive. We vacate the trial court's order enforcing the settlement agreement.

## II. ATTORNEY FEES

Engelland further argues that the trial court erred by awarding reasonable attorney fees to First Horizon. We agree.

A court may award attorney fees only when authorized by a contract, a statute, or a recognized ground in equity. *Bowles v. Dep't of Ret. Sys.*, 121 Wn.2d 52, 70, 847 P.2d 440 (1993). The threshold question of whether a trial court is authorized to award attorney fees is a question of law, which we review de novo. *Gander v. Yeager*, 167 Wn. App. 638, 646, 282 P.3d 1100 (2012). But when attorney fees are authorized, we review an attorney fee award for an abuse of discretion. *Gander*, 167 Wn. App. at 647.

Engelland claims that, in the absence of an enforceable settlement agreement, the trial court lacked authority to award reasonable attorney fees. Other than arguing that an enforceable

settlement agreement existed, First Horizon does not dispute this claim. Because the trial court erred by enforcing the settlement agreement, we also vacate the trial court's attorney fee award.[12]

## ATTORNEY FEES ON APPEAL

Both parties request reasonable attorney fees and costs on appeal. We deny both requests.

Under RAP 18.1, the prevailing party is entitled to attorney fees on appeal when applicable law authorizes the award. *See McGuire v. Bates*, 169 Wn.2d 185, 191, 234 P.3d 205 (2010). We deny First Horizon's request because it is not the prevailing party.

Citing *Herzog Aluminum, Inc. v. General American Window Corp.*, 39 Wn. App. 188, 692 P.2d 867 (1984), Engelland claims he is entitled to reasonable attorney fees and costs under the purported settlement agreement.[13] But Engelland's reliance on *Herzog* is misplaced.

---

[12] We do not address Engelland's alternative argument that the attorney fee award was partially erroneous to the extent that it included nonrecoverable fees incurred in *negotiating*, rather than *enforcing*, the settlement agreement.

[13] The purported settlement agreement provided:

> Attorneys' Fees and Costs. The Parties hereto shall bear their own fees, costs and expenses incurred in connection with the negotiation, drafting and consummation of this Agreement. However, if any party institutes legal proceedings in connection with, or for the enforcement of this Agreement or any provision of it, the prevailing party shall be entitled to recover from the losing party its costs, including reasonable attorneys' fees, at both trial and appellate levels.

CP at 201.

*Herzog*, 39 Wn. App. at 191-97, interpreted RCW 4.84.330,[14] which provides in relevant part:

> In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements.

Thus when a contract allows only one party to recover attorney fees in an action to enforce the contract, RCW 4.84.330 entitles the other party to recover reasonable attorney fees if it prevails. *See Wachovia SBA Lending, Inc. v. Kraft*, 165 Wn.2d 481, 489, 200 P.3d 683 (2009). Our Supreme Court has approved *Herzog*'s holding that RCW 4.84.330 applies even when the contract containing the attorney fee provision is invalidated. *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 839, 100 P.3d 791 (2004) (citing *Herzog*, 39 Wn. App. at 196-97).

However, Engelland is not the prevailing party under RCW 4.84.330. RCW 4.84.330 further defines the prevailing party as "the party in whose favor final judgment is rendered." For the purposes of RCW 4.84.330, a final judgment disposes of all issues in controversy. *Wachovia*, 165 Wn.2d at 491-92. Our determination that the trial court erred by enforcing the settlement agreement does not dispose of all issues in controversy; instead it requires the trial court to take further action to decide the remaining issues consistent with this opinion. Without a

---

[14] In 2011, the legislature amended RCW 4.84.330 to insert gender-neutral language and change a singular noun to the plural. LAWS OF 2011, ch. 336, § 131. The amendments do not affect our analysis.

final judgment in his favor, Engelland is not the prevailing party and cannot recover attorney fees.[15]

We vacate the trial court's order enforcing settlement and its award of attorney fees to First Horizon. We remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, C.J.

We concur:

Johanson, J.

Bjorgen, J.

---

[15] Moreover, the attorney fee provision here is bilateral, in that it allows either party to recover attorney fees if it prevails. But RCW 4.84.330 generally does not apply when a contract contains a bilateral attorney fee provision. *Kaintz v. PLG, Inc.*, 147 Wn. App. 782, 786-87, 197 P.3d 710 (2008).