# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| CHRISTOPHER J. BORGEN and MELISSA A. BORGEN, husband and wife,<br><br>Respondents,<br><br>v.<br><br>KENNETH L. TALLMAN and SHEILA I. TALLMAN, husband and wife,<br><br>Appellants. | No.  58856-1-II<br><br><br>UNPUBLISHED OPINION |

PRICE, J. — Christopher and Melissa Borgen sued their neighbors Kenneth and Sheila Tallman over a boundary line dispute.  The dispute started when the Tallmans began installing a fence near their boundary with the Borgens.  The Borgens alleged that the fence interfered with an easement the Borgens believed they held on the same location.

Eventually, the parties participated in a mandatory settlement conference with the superior court.  Following these negotiations, the parties agreed to a series of terms to resolve the case (settlement agreement).  Among its numerous provisions, the settlement agreement required the Tallmans to remove their fence posts by a specific date in exchange for the installation of a split rail fence and the planting of trees to act as a privacy screen.  When the Tallmans failed to remove their fence posts by the deadline, the Borgens moved to enforce the settlement agreement.  The superior court granted the Borgens' motion, awarded the Borgens their attorney fees, and ordered the Tallmans to remove the fence posts.

The Tallmans appeal. The Tallmans make several arguments, but they primarily contend that the superior court erred in enforcing the settlement agreement because the parties did not reach a meeting of the minds with respect to the location of the trees for the privacy screen. Both the Tallmans and the Borgens request attorney fees.

We affirm the superior court, deny the Tallmans' request for attorney fees, and grant the Borgens' request for attorney fees on appeal.

## FACTS

### I. BACKGROUND

The Tallmans and the Borgens are neighbors. In 2022, the Tallmans started building a fence near the Borgens' property. The Borgens believed that the Tallmans' fence infringed upon an easement they thought they possessed. The Borgens filed a complaint for a declaratory judgment for the establishment of their easement rights over the Tallman property, breach of an easement agreement, violation of prescriptive easement, and harassment.

### II. SETTLEMENT AGREEMENT

In July 2023, a mandatory settlement conference was held at the superior court. During the course of the settlement conference, the parties exchanged numerous emails negotiating the terms of a settlement agreement. As the negotiations were winding down, the Tallmans responded with a counteroffer stating, "If you are in agreement with below . . . – then this will be our CR 2A but to be formalized." Clerk's Papers (CP) at 43. After a few more exchanges, the Tallmans accepted the terms of the Borgens' latest offer by email (responding, "We are in agreement"). CP at 42. To which, the Borgens replied, "We concur we now have an enforceable CR 2A settlement agreement." CP at 42.

2

The settlement agreement contained numerous terms. At its core, the agreement provided that the Tallmans would remove their fence posts by a specified date in exchange for the installation of a split rail fence along the property boundary and the planting of trees along the fence to act as a privacy screen. The trees were to be of a particular type and spaced apart so that the trees would create a privacy screen upon maturity. The Borgens were obligated to maintain the trees, and the trees were required to be of a certain height once planted. These aspects of the agreement were included in an email exchange that provided the following in bullet-point fashion:

• The Tallmans will remove all of their current fence posts within 10 days. Agreed as of July 31[.]

• A four foot high split rail fence will be installed by the end of September along the western boundary line and at my clients' cost.

• A line of trees will be installed by the end of the fall, or as recommended by a horticulturist, again at my clients' cost. Can you confirm they are Leland [sic] cyprus[?] CORRECT[.]

• The fence and line of trees would extend south to the point where their property intersects Fagerholm Lane, with a reasonable gap for their driveway, as it currently exists or as it may be relocated in the future. The fence will extend the entire length going north but the trees will extend two third of the western property line so that the northern one third of the boundary line does not have any trees. Up to large fir tree[.] NO, IT WILL NOT EXTEND QUITE THAT FAR NORTH. THE TREES WILL END ABOUT 20 TO 30 FEET SOUTH OF THAT TREE. Agreed.

• The trees will be spaced apart so that the line of trees will create a privacy screen once the trees are mature. Continu[]ing obligation to maintain. AGREED, THE BORGENS WILL MAINTAIN THE TREES AND THE FENCE.

• The trees will be on average at least six feet in height when they are planted.

CP at 43-44.

In addition to these terms, the settlement agreement imposed other obligations on the parties. For example, it provided that (1) the easement would remain enforceable but be revised, (2) the Borgens would waive their claim for emotional distress, (3) the Borgens would refrain from

3

installing lights on the fence and trees, (4) that the Tallmans would maintain the strip of property between a nearby road and the parties' common boundary line, (5) that the covenant would run with the land and the revised easement would bind "successor [sic] on both sides," and (6) that the Tallmans would be permitted to repair and replace existing structures and to plant natural vegetation as necessary for the purpose of privacy screening in the easement area. CP at 44. The settlement agreement also contained a provision for attorney fees that provided, "Each party pays all of their costs incurred in this litigation. *Attorney provisions for enforcement*." CP at 44 (emphasis added). Finally, the settlement agreement contained a clause requiring that the Borgens both draft a final settlement agreement consistent with its terms and present a stipulation and agreed order of dismissal.

III. THE BORGENS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND APPEAL

Following the settlement conference, the parties exchanged several drafts of a more finalized agreement, but a formal agreement was never signed. These exchanges appeared to show a dispute between the parties about the precise location of the trees—the Borgens wanted to plant the trees on the east side of the fence, but the Tallmans wanted the trees on the west side of the fence.

The Tallmans did not remove the fence posts by the deadline, causing the Borgens to move to enforce the settlement agreement. The Borgens argued that the Tallmans had refused to comply with the terms of the settlement agreement and requested attorney fees pursuant to the terms of the settlement agreement.

The superior court held a hearing on the Borgens' motion. The Borgens argued that the agreement was a binding CR 2A settlement agreement because the terms were agreed to, the

4

agreement was in writing, and the agreement was subscribed to by the parties' attorneys. The Borgens contended that the execution of a more formalized agreement was not a condition precedent to the enforceability of the CR 2A settlement agreement. The Borgens also argued that there were no genuine issues of material fact as to whether the Tallmans failed to removed their fence posts by the deadline.

The Tallmans opposed the Borgens' motion, arguing that there was no enforceable agreement because its terms were not sufficiently definite and there was not a meeting of the minds with respect to all material terms. The Tallmans focused on their contention that there was a genuine issue of material fact with respect to where the trees were to be located. The Tallmans attached a declaration from Sheila Tallman, which asserted that a formalized agreement was never executed because of a lack of agreement on certain terms, including whether the trees were to be planted on the east side or the west side of the fence. The declaration contains multiple references to the Tallmans' principal concern for maintaining privacy between the two properties through an effective privacy screen.

The superior court agreed with the Borgens and granted the motion to enforce the settlement agreement. The superior court explained that the settlement agreement's language showed that it was "immediately enforceable and that execution of a formal settlement agreement was not a condition precedent to the agreement's existence." CP at 123. The superior court also noted that the terms of the settlement agreement relevant to the issue of the Tallmans' fence posts were "unambiguous" and were "clearly agreed to by the parties." CP at 123. The superior court also awarded attorney fees to the Borgens.

The Tallmans appeal.

5

ANALYSIS

I. ENFORCEABILITY OF THE SETTLEMENT AGREEMENT

The Tallmans make four main arguments challenging the enforceability of the settlement agreement: (1) the superior court erred because the settlement agreement contemplated a further formalized agreement, (2) the settlement agreement is not enforceable because it was merely an agreement to agree and required a further meeting of the minds of the parties, (3) the superior court erred in enforcing one part of the settlement agreement where other portions of the agreement were still in dispute, and (4) there were genuine issues of material fact with respect to where the trees were to be located. Stated simply, the Tallmans essentially argue that the agreement is not enforceable because the parties did not reach a meeting of the minds on the location of the trees.[1] We disagree.

A. STANDARD OF REVIEW

When a motion to enforce a settlement agreement relies on affidavits or declarations, the superior court considers the motion according to summary judgment procedures. *Condon v. Condon,* 177 Wn.2d 150, 161, 298 P.3d 86 (2013); *see* CR 56(c) (summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law). Thus, the moving party bears the burden of showing that there is no genuine dispute as to the settlement agreement's existence and its material terms. *Condon,* 177 Wn.2d at 162. The superior court must decide whether, viewing the evidence in the light most favorable to the

---

[1] The Tallmans discuss the issue of the trees throughout their briefing, but they also make several passing references to a potential dispute regarding the width of a driveway. But beyond these passing references, the Tallmans do not explain this dispute or offer any meaningful analysis about its materiality. Thus, we do not further consider it.

nonmoving party, reasonable minds could reach only one conclusion. *Id.* We review the superior court's decision regarding a motion to enforce a settlement agreement de novo. *Id.*

### B. LEGAL PRINCIPLES

A court's authority to enforce a settlement agreement between parties to litigation is governed in part by CR 2A. *Lavigne v. Green*, 106 Wn. App. 12, 16, 23 P.3d 515 (2001). CR 2A states,

> No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

"The purpose of CR 2A is to give certainty and finality to settlements." *Condon*, 177 Wn.2d at 157. This purpose "is not served by barring enforcement of an alleged settlement agreement that is not genuinely disputed, for a nongenuine dispute can be, and should be, summarily resolved without trial." *In re Marriage of Ferree*, 71 Wn. App. 35, 41, 856 P.2d 706 (1993).

Settlement agreements are contracts. *Riley Pleas, Inc. v. State*, 88 Wn.2d 933, 937-38, 568 P.2d 780 (1977). To form a contract, the parties must objectively manifest their mutual assent to the definite terms of an offer. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177-78, 94 P.3d 945 (2004). "If an offer is so indefinite that a court cannot decide just what it means and fix exactly the legal liability of the parties, its acceptance cannot result in an enforceable agreement." *16th St. Investors, LLC v. Morrison*, 153 Wn. App. 44, 55, 223 P.3d 513 (2009), *review denied*, 168 Wn.2d 1033 (2010). However, absolute certainty regarding every aspect of the contract is not required, reasonable certainty is sufficient. 25 RICHARD A. LORD, WILLISTON

ON CONTRACTS § 67:4 (4th ed. 2002). "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." RESTATEMENT (SECOND) OF CONTRACTS, § 33 (AM. LAW INST. 1979) (boldface omitted).

A mere "agreement to agree" is unenforceable. *Keystone*, 152 Wn.2d at 175-76. "An agreement to agree is 'an agreement to do something which requires a further meeting of the minds of the parties and without which it would not be complete.' " *Id.* at 175-76 (quoting *Sandeman v. Sayres,* 50 Wn.2d 539, 541-42, 314 P.2d 428 (1957)).

However, a preliminary settlement agreement, established by informal writings, may be binding on the parties even if a final settlement agreement is contemplated. *See Morris v. Maks*, 69 Wn. App. 865, 869, 850 P.2d 1357, *review denied*, 122 Wn.2d 1020 (1993). In determining whether informal writings establish an enforceable contract, *Morris* provides three requirements to consider, specifically "whether (1) the subject matter has been agreed upon, (2) the terms are all stated in the informal writings, and (3) the parties intended a binding agreement prior to the time of the signing and delivery of a formal contract." *Id.*

The focus of the second *Morris* requirement is whether all the *material* terms have been included. *Lavigne*, 106 Wn. App. at 20 ("In determining whether settlement discussions are sufficient to establish a contract even though the parties contemplate a formal agreement, we consider, among other things, whether the parties have addressed all the *material* terms of the agreement." (emphasis added)). "A 'material term' is one that goes to the 'substance, gist, or legal effect' of the agreement." *Fairway Collections, LLC v. Turner*, 29 Wn. App. 2d 204, 226, 540 P.3d 805 (2023) (quoting *Ferree*, 71 Wn. App. at 40).

Whether there has been mutual assent to material terms is ordinarily a question of fact for the fact finder. *See P.E. Sys., LLC v. CPI Corp.*, 176 Wn.2d 198, 207, 289 P.3d 638 (2012). However, questions of fact may be determined as a matter of law if reasonable minds could not differ. *Id.*

C. APPLICATION

The Tallmans argue that the superior court erred because the settlement agreement was unenforceable. In support, they raise several, somewhat overlapping reasons. But primarily the Tallmans contend that the agreement was merely an agreement to agree that contemplated a future final agreement. According to the Tallmans, the agreement falls short of being enforceable because it did not state all material terms—principally, that the location of, and the exact distances between, the trees for the privacy screen were not included among the terms. By enforcing the agreement when there remained a dispute about the actual location of the trees, the superior court, according to the Tallmans, improperly decided a genuine issue of material fact.

As discussed above, in determining whether preliminary agreements are enforceable we consider "whether (1) the subject matter has been agreed upon, (2) the terms are all stated in the informal writings, and (3) the parties intended a binding agreement prior to the time of the signing and delivery of a formal contract." *Morris*, 69 Wn. App. at 869. If the settlement agreement satisfies each *Morris* requirement, then the superior court did not err in enforcing its terms, including the Tallmans' obligation to remove their fence posts. *See id.* at 872.

Here, there is no reasonable dispute that the settlement agreement satisfies the first and third *Morris* requirements. With respect to the first *Morris* requirement, the subject matter of the

agreement was clearly agreed upon—the resolution of the parties' dispute about the Tallmans' alleged encroachment into the Borgens' easement.

With respect to the third *Morris* requirement, whether the parties intended a binding agreement prior to the time of the signing and delivery of a formal contract, the answer is equally clear. The deadlines in the settlement agreement required prompt action; the parties agreed to quick deadlines for certain obligations, such as the removal of the Tallmans' fence by July 31, the installation of a split rail fence approximately three months later by the end of September, and the installation of a line of trees by the end of the fall (or as recommended by a horticulturist). These specific deadlines demonstrate that the parties intended the agreement to be binding on the parties without the necessity for a further formalized agreement. Moreover, the parties' statements as the negotiations concluded were unequivocal. The Tallmans' attorney wrote, "We are in agreement." CP at 42. To which, the Borgens' attorney replied, "We concur we now have an enforceable CR 2A settlement agreement." CP at 42; *see Morris*, 69 Wn. App. at 871-72 (whether the parties intended a binding agreement prior to the time of the signing of a formal contract is determined by looking at what is written, not any unexpressed subjective intent of the parties).

The crux of the parties' dispute is found in the second *Morris* requirement, which requires an analysis of whether all of the material terms were stated. 69 Wn. App. at 872; *see also Lavigne*, 106 Wn. App. at 20 (specifying that the focus of the second *Morris* requirement is "whether the parties have addressed all the material terms of the agreement."). The Tallmans essentially argue not all materials terms were stated. The Borgens disagree.

10

The substance of the settlement agreement was much more than a vague outline of a resolution—numerous terms were included.[2] Notwithstanding this level of detail in the agreement, the Tallmans contend the agreement fails because it does not speak to the precise question of which side of the fence that the trees would be located on or the exact distances between each tree given the potential uncertainty of when the trees mature.

But as discussed above, the second *Morris* requirement is focused only on the sufficiency of the *material* terms. *Lavigne*, 106 Wn. App. at 20. "A 'material term' is one that goes to the 'substance, gist, or legal effect' of the agreement." *Fairway Collections*, 29 Wn. App. 2d at 226 (quoting *Ferree*, 71 Wn. App. at 40). Our question, then, is whether the precise location of the trees is a material term such that its absence makes this agreement unenforceable. We conclude that the precise location is not a material term.

Clearly the obligation to plant trees along the boundary to effectuate a privacy screen is a material term to the settlement agreement. From the context of both the dispute and its negotiated resolution, dividing the parties' property with barriers was an obvious focus of the agreement.

---

[2] As noted above, the agreement included numerous specific details: including, the date that the Tallmans were to remove their fence posts; the height of the new split rail fence; the location of the fence along the western boundary line; the cost of the fence was to be borne by the Borgens; the installation of the fence by the end of the fall; the use of a specific type of tree (Leyland cyprus), and the placement of the trees such that they would create a privacy screen upon maturity; details about the location of the fence and trees; the Borgens were obligated to maintain the trees and the fence; the average height of the trees when planted; the easement at issue in the lawsuit would remain enforceable but be revised so that the Tallmans were not in violation; the Borgens would waive their claim for emotional distress; the Borgens would refrain from installing lights on the fence and trees; the Tallmans would maintain the strip of property between a nearby road and the parties' boundary line; the agreement was a covenant to run with the land and the revised easement would bind successors; and the Tallmans would be permitted to repair and replace existing structures and to plant natural vegetation as necessary for the purpose of privacy screening in the easement area.

In fact, the agreement provides detailed parameters of the location of the fence and trees along the north/south corridor of the property. There are also additional requirements about the trees—they must be a particular type, a particular height, and planted such that they will "create a privacy screen" upon maturity. CP at 44. Indeed, the Tallmans' overriding concern for privacy between the properties is the dominant theme of Sheila Tallman's declaration filed with the superior court. Accordingly, reasonable minds could not differ that planting trees along the boundary for a privacy screen goes to the " 'substance, gist, or legal effect' " of the agreement. *See Fairway Collections*, 29 Wn. App. 2d at 226 (quoting *Ferree*, 71 Wn. App. at 40).

But the same cannot be said about the *precise* location of the trees vis-à-vis the east side or the west side of the fence. It is true that the parties do not appear to agree on this aspect. But even construing the facts in the light most favorable to the Tallmans, the level of detail they demand cannot be considered a material term—the clear "gist" of the obligation to plant the trees was for a privacy screen, and it is plausible that this core purpose could be met regardless of which side of the fence the trees are located.

If future events prove that whether the trees are planted on the east side or the west side of the fence (or exact distance between the trees) becomes factually relevant to the effectiveness of the trees as a privacy screen, perhaps a breach could result. But that potential dispute is not fatal to the overall enforceability of the settlement agreement. *See* DAVID K. DEWOLF ET AL., 25 WASH. PRACTICE: CONTRACT LAW AND PRACTICE § 2:27 (3d ed. 2014) (explaining that "indefiniteness as to an immaterial term is not fatal. . . . any uncertainty as to incidental or collateral matters is generally not harmful to the validity of the contract"). The contractual requirement that the trees must be an effective privacy screen upon maturity is sufficient to serve as a basis for determining

a breach without the need to narrowly specify their precise location. *See* RESTATEMENT (SECOND) OF CONTRACTS, § 33 ("The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.").

We hold that the settlement agreement is enforceable because it satisfies the three *Morris* requirements. The subject matter was agreed upon, all material terms were stated, and the parties intended the settlement agreement to be binding. Even construing the facts in a light most favorable to the Tallmans, the superior court did not err in granting the Borgens' motion to enforce the settlement agreement.

## II. ATTORNEY FEES

Both parties request attorney fees on appeal. The Tallmans request attorney fees for the superior court proceedings and for this appeal pursuant to the mutuality of remedy doctrine. The Tallmans argue that if they succeed in having the settlement agreement declared unenforceable, the mutuality of remedy doctrine would provide fees to them. But because the Tallmans are not the prevailing party on appeal, we deny their request for attorney fees.

The Borgens request attorney fees on appeal pursuant to the terms of the settlement agreement. The settlement agreement included a term that provided, "Each party pays all of their costs incurred in this litigation. Attorney provisions for enforcement." CP at 44. This term shows that the parties agreed to award attorney fees to the prevailing party in an action enforcing the settlement agreement. Because the Borgens have prevailed, we hold that they are entitled to attorney fees on appeal.

13

CONCLUSION

We affirm the superior court, deny the Tallmans' request for attorney fees, and grant the Borgens' request for attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, C.J.

GLASGOW, J.